**John SANSONE, Margaret Sansone and Angelina Boisvert**

**v.**

**OCEAN ACCIDENT AND GUARANTEE CORP., Ltd.**

**Civ. A. No. 13492, Division B.**

United States District Court
E. D. Louisiana,
New Orleans Division.
April 21, 1964.

Bernard S. Dolbear, New Orleans, La., for plaintiffs.

Peter H. Beer of Montgomery, Barnett, Brown & Read, New Orleans, La., for defendant.

FRANK B. ELLIS, District Judge.

This is a motion to dismiss for lack of jurisdictional amount in an action claiming unliquidated tort damages. Late in May of 1962 the three plaintiffs were visiting New Orleans, and on the 29th of that month, while stopping in traffic near the intersection of Canal and North Broad Streets, their automobile was struck from the rear by a station wagon owned by the Coroner's Office of the City of New Orleans and insured by the defendant, Ocean Accident and Guarantee Corp., Ltd. Shortly thereafter and over a period of time each plaintiff was examined and treated by competent medical practitioners both here in New Orleans and in their home state of Connecticut. Initial medical reports indicated that plaintiffs had suffered injuries generally classed as of the whiplash type.

Suit was commenced against the insurer alone pursuant to the Louisiana Direct Action Statute, LSA–R.S. 22:655. Since all plaintiffs are residents of Bridgeport, Connecticut, and defendant has its principal United States place of business in Georgia, diversity jurisdiction is properly laid in this Court. 28 U.S.C.A. § 1332(a) (1). Defendant, however, objects and asserts that the

requisite jurisdictional amount is not present. A motion to dismiss is the appropriate vehicle for raising this issue. Federal Rules of Civil Procedure, Rule 12 (b) (1), 28 U.S.C.A.; and see Gibbs v. Buck, 307 U.S. 66, 59 S.Ct. 725, 83 L.Ed. 1111 (1939).

In determining the validity of a motion to dismiss for lack of jurisdictional amount, the basic and controlling test is that set forth by the Supreme Court in St. Paul Mercury Indemnity Co. v. Red Cab Company, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938):

"The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that * * * the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." (Footnotes omitted) 303 U.S. at 288–289, 58 S.Ct. at 590, 82 L.Ed. 845.

This test has been followed repeatedly without any significant alterations. Horton v. Liberty Mutual Insurance Co., 367 U.S. 348, 81 S.Ct. 1570, 6 L.Ed.2d 890 (1961).

Looking then to the claim in this case, the complaint alleges that damages amount to a total of $75,000.00, or $25,000.00 for each plaintiff. It is well settled that for purposes of jurisdictional amount each party's claim must be of the requisite jurisdictional amount where more than one claim is joined in an action.[1] Thus, each plaintiff's claim must be in excess of the jurisdictional amount, and to successfully prosecute this motion the defendant must prove to a legal certainty that each of the claims does not exceed that amount. Normally, in tort actions for unliquidated damages,

the amount demanded in the complaint is the amount in controversy. Such is the general rule. However, the general rule is subject to the modification that the claim must have been made in good faith. The complaint carries with it the presumption that it is proffered in good faith, so that in order to overcome this presumption, the defendant must show that the amount claimed could not, as a matter of legal certainty, be in excess of the jurisdictional amount. See Harris v. Illinois Central R. Co., 220 F.2d 734 (5 Cir. 1955).

Because of this rigid and inflexible test, coupled with the inherent unpredictability of *quantum* in tort actions, reported cases wherein the complaint was dismissed for lack of jurisdictional amount are relatively rare, but not entirely non-existent.[2] Three cases from this circuit are particularly noteworthy. In Leehans v. American Employers Ins. Co., Civ.A.No.8744 (E.D. La.1959), aff'd 273 F.2d 72 (5 Cir. 1959), Judge J. Skelly Wright dismissed a tort action where the plaintiff claimed $13,045.00 in damages for pain, suffering, disablement and disfigurement. In affirming the District Court, the Fifth Circuit Court of Appeals noted "that the injuries were so minor that the claim for damages exceeding the jurisdictional amount of $10,000.00 was not made in good faith." 273 F.2d 72. And in Bacharach v. F. W. Woolworth Co., D.C., 212 F.Supp. 83 (1963) the plaintiff demanded the sum of $25,000.00 for false arrest, $25,000.00 for false imprisonment, $25,000.00 for false accusation and $50,000.00 for humiliation and embarrassment. Despite this presumably good faith claim, Judge E. Gordon West granted defendant's motion to dismiss for lack of the requisite jurisdictional amount and concluded "that the amount of damages demanded by the plaintiff herein is not made in

---

1. Pinel v. Pinel, 240 U.S. 594, 36 S.Ct. 416, 60 L.Ed. 817 (1916); Payne v. State Farm Mutual Automobile Insurance Co., 266 F.2d 63 (5 Cir. 1959).

2. See, for example, Turner v. Wilson Line of Massachusetts, 242 F.2d 414 (1 Cir.

1957); Lynn v. Smith, D.C., 193 F.Supp. 887 (1961); Vera Cruz v. Chesapeake & Ohio Railway Co., D.C., 192 F.Supp. 958 (1961); Diana v. Canada Dry Corp., 189 F.Supp. 280 (1960).

legal good faith." Judge West added, "(i)t is further concluded that the proofs adduced by the plaintiff established to a legal certainty that she was never entitled to recover any amount in this case even remotely approaching the minimum jurisdictional amount necessary to confer jurisdiction upon this Court." (citations omitted) 212 F.Supp. at 85.

The third case, and the one closest in point to the instant case, is Larson v. United States Casualty Co., Civil Action No. 11413 (D.C. E.D.La. September 28, 1962). There an expectant mother was riding as a guest passenger in an automobile that had stopped at an intersection when it was struck from the rear by another vehicle. Plaintiff suffered "a mild whiplash injury of the neck, as well as contusions of the lower abdomen." Still, Judge Robert A. Ainsworth granted a defense motion to dismiss the action for lack of good faith jurisdictional amount. The reasons in support of the dismissal, otherwise not officially reported, indicate the proper interpretation and correlation of the St. Paul Mercury and Leehans cases to this type of action.

"St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283 [58 S.Ct. 586, 82 L.Ed. 845] (1938) stated that the rule governing dismissal for want of jurisdictional amount is that the sum claimed by the plaintiff must be accepted if apparently made in good faith; however, the Fifth Circuit held that where pain and suffering are alleged this is not the rule. Leehans v. American Employers Ins. Co., 5 Cir. 1959, 273 F.2d 72.

"If, according to the Fifth Circuit, the plaintiff's claim for pain and suffering does not have to be accepted merely on the basis of its allegations, then the trial court must make an independent determination of the amount in controversy. It is the duty of all Federal judges to inquire into their power to hear each case, and 'whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.' Federal Rules of Civil Procedure, Rule 12 (h)."

Recognizing then that the courts have the power and authority, if not the urgent duty, to determine whether the sum claimed was in good faith, it remains next to decide how this determination should proceed.

As noted above, prosecution of a motion to dismiss for lack of jurisdictional amount is a proper course. In most cases this motion is argued before trial, but in Bacharach, supra, Judge West granted the motion after defendant closed its case and before it went to the jury. In Lynn v. Smith, supra, Note 2, the case was dismissed after arguments on a motion for judgment notwithstanding the verdict. While the motion can thus be decided either before or after trial, where the trial court can discern the true nature of the claim prior to trial, economies of time and expense, as well as justice to the parties would dictate that the determination be made at that time.[3]

---

3. While the 1958 amendment to 28 U.S.C.A. § 1332(b) permits the Courts to assess costs on any plaintiff who recovers less than $10,000.00 after trying the case, where the Court's docket is already overcrowded the goal is to eliminate such cases from the trial calendar, not to impose the sanction of taxing costs once the time has been expended. Chief Judge William E. Steckler of the Southern District of Indiana recognized and clearly stated these problems in a recent Bar Journal article. Entitled "When Diversity Plaintiffs Face Court Costs" in *Res Gestae*, Journal of the Indiana Bar Association, January 1964, pages 11–12, Chief Judge Steckler suggested that the Courts make greater use of section 1332(b) as a start to discouraging the filing of colorable claims. However, this suggestion is made only because of the difficulty in determining prior to trial that the claim was made in bad faith. He concludes with an admonition to attorneys that those "who file private civil cases in Federal Courts should be certain that claims will meet the good faith standard and that demands for damages are reasonably and honestly

Since such a ruling must be based, in most cases, on medical reports, one further consideration centers on whether to make that determination on the medical reports alone or to require that the depositions of the doctors be taken.

In the case at bar the motion to dismiss for lack of jurisdictional amount was initially argued on August 14, 1963. At that time the motion was denied "without prejudice to renewal of motion after taking depositions of doctors." That ruling was made in the spirit engendered by the July, 1963, amendments to the Federal Rules of Civil Procedure, especially the amendments to Rule 56, where summary proceedings based on sworn testimony and affidavits are encouraged. The Notes of the Advisory Committee on Rules pertaining to the 1963 amendments to Rule 56(c) cogently indicate that the "very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." That theory is equally applicable to a motion to dismiss for lack of jurisdictional amount. The Advisory Committee Notes continue with a recognition of the realities involved, "that, despite the best efforts of counsel to make his pleadings accurate, they may be overwhelmingly contradicted by the proof available to his adversary." [4] In order to determine whether the proof available to the defendant overwhelms the presumably good faith claim of the plaintiff, the use of sworn testimony in deposition form complies with both the spirit and the letter of the Rules. While not absolutely necessary then, a determination of the motion after examination of the doctor's depositions appears just and proper.[5]

The teaching of the foregoing discussion is that where a Federal Court perceives a claim for unliquidated tort damages to be substantially less than the requisite jurisdictional amount, that claim becomes "ipso facto" indicative of bad faith and where supported by competent medical depositions as in this case, establishes to a legal certainty that the amount in controversy is less than the statutory jurisdictional amount, requiring dismissal. Especially imperative is such a determination in the Eastern District of Louisiana where four judges have a case backlog approaching four thousand cases. A great mass of these cases involve unliquidated tort claims arising under the Louisiana Direct Action Statute, supra, which permits a Louisiana resident to sue a foreign insurance company without joining the insured and thereby achieving diversity of citizenship jurisdiction in the Federal Courts of Louisiana.

Looking then to the medical reports, depositions, and affidavits filed in this case, it remains to determine whether the claims advanced by the three plaintiffs could each exceed the minimum jurisdictional requirement. Immediately following the accident all three plaintiffs went to Charity Hospital in New Orleans and were given first aid treatment. From there they went to their rooms in a local hotel and were attended by Dr. Redler the following day, and by Dr. J. Kenneth Saer on June 2, 1962. Thereafter the three plaintiffs returned to their homes in Bridgeport, Connecticut, and were treated by their family physicians, Dr. Nicholas Spinelli for the Sansones, and Dr. Hans Rosenberg for Mrs. Boisvert.

Margaret Sansone was examined on June 2, 1962, by Doctor Saer and his

---

promising of jury awards above the jurisdictional amount." Thus, in the last analysis it is the attorneys who have the initial obligation to the Court in this respect.

4. Federal Rules of Civil Procedure, Rule 56(b), Notes of the Advisory Committee on Rules, 28 U.S.C.A. (1963 Supp. p. 56)

5. Since this determination is one of jurisdictional fact, there is no right to have it tried before a jury. Leehans v. American Employers Ins. Co., supra. See, however, cautionary comments at 1 Barron & Holtzoff, Federal Practice and Procedure § 24 (Rules Ed.1963 Supp.), especially p. 33 text at note 50.5, and p. 38, note 50.1 concerning the Leehans case.

medical report indicates that she complained of soreness and stiffness in the neck and occipital headache. In analyzing the X-rays taken by Dr. Redler, the report indicates that there was "no evidence of fracture or bony injury," and there was "normal reversal of the cervical curve without any difference in the intervertebral disc spaces." It was the doctor's impression that:

"This patient sustained a cervical spine strain. It is felt that there is no serious injury to the intervertebral disc or the apophyseal joints themselves, and that the injury is localized mostly to the cervical muscles. The injury is a relatively mild one, and I feel will subside completely with time. It is not possible to state the length of time symptoms will last, although prognosis for recovery is very good."

Doctor Saer then prescribed "Empirin" and two weeks of physiotherapy, if any discomfort persisted.

Upon returning home Mrs. Sansone visited Dr. Spinelli. From the deposition it appears that Dr. Spinelli examined this plaintiff on June 9, 1962, and periodically thereafter until October 5, 1962. However, there was a marked improvement as early as June 28, 1962. His examination merely reaffirmed the diagnosis of Dr. Saer, and his X-rays proved negative. Dr. Spinelli's prognosis as of June 18, 1962, indicated complete recovery within seven to eight weeks. This plaintiff's special damages, including medical expenses, amounted to $270.70.

When examined by Dr. Saer, John Sansone complained of soreness and stiffness in posterior cervical area, but the examiner detected "no apparent discomfort", and the X-rays were negative. It was Dr. Saer's opinion that the prognosis for complete recovery was very good. He recommended however that plaintiff not go back to Connecticut by automobile. Dr. Spinelli's examination revealed moderate pain in back motion at the extremes with no limitation of motion. He did detect a scoliosis but could not attribute it to the May 29, 1962, accident. A sug-

gestion was made that Mr. Sansone consult a neurosurgeon, but apparently no appointment was ever made. Plaintiff was then discharged as completely recovered on October 5, 1962. Special damages, including medical expenses and an estimate that he would lose roughly $600.-00 a year in wages, were itemized in the amount of $1,047.58.

Mrs. Boisvert was apparently the most severely injured. She contends that after the accident she was "dazed" and blacked out for some two hours. Dr. Saer's examination of the X-rays taken by Dr. Redler proved negative, and the physical examination revealed only soreness and tenderness attributable to the accident. The medical report concluded that Mrs. Boisvert had "signs and symptoms of a relatively mild sprain of the soft tissues of the cervical spine; associated with this is moderate apprehension and nervousness. I believe that her symptoms will gradually subside. It is not possible to state exactly how long it will take, but I think the prognosis for complete recovery is good." The doctor then recommended physiotherapy treatments after her return home. Her family physician diagnosed her condition as including a "concussion of the brain, a sprain of the right shoulder and a whiplash type of injury of the spine." Dr. Rosenberg administered physiotherapy treatments for several months but otherwise found no brain damage and discharged the patient as apparently completely recovered on November 16, 1962. Mrs. Boisvert's special damages total $681.51.

 From the foregoing analysis of medical reports and depositions it becomes apparent to the Court that none of the plaintiff's claims can in good faith be said to exceed the $10,000.00 jurisdictional minimum requirement. Based on such a determination it can further be said that to a legal certainty each claim is substantially less than the jurisdictional amount, justifying dismissal of the case.

It is so ordered.