**The RUBEROID COMPANY**

**v.**

**J. Rolse ROY and International Speed Crete Research Corporation.**

**Civ. A. No. 13833–B.**

United States District Court
E. D. Louisiana,
New Orleans Division.

April 8, 1965.

Peter G. Burke and Ashton Phelps, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., for plaintiff.

Philip C. Ciaccio, Cronvich, Ciaccio, Wambsgans & Perry, Metairie, La., for defendants.

FRANK B. ELLIS, District Judge.

This action was commenced by the Ruberoid Company to recover $27,885.06 due on account for cement bulkhead material sold to International Speed Crete Research Corp., payment of which was guaranteed by J. Folse Roy.[1] In their amended answer defendants admit the accuracy of the amount due, but allege a set off in the sum of $35,024.81 by way of counter-claim under Rule 13, F.R.Civ.P., 28 U.S.C.A.

Plaintiff moved for judgment on the pleadings as to both its claim and the counter-claim. On January 20, 1965, this Court granted summary judgment in favor of plaintiff on its claim for the account due, but stayed the entry of that judgment pending determination of the motion concerning the validity of the counter-claim. The question of whether the counter-claim states a cause of action now faces the Court.

The pleadings and affidavits indicate that, among its other activities, the Ruberoid Co. engages in the manufacture and sale of cement bulkhead materials used in seawall construction. From September 1, 1961, through December 31, 1962, Ruberoid employed John S. Greene as a salesman to solicit orders for this product throughout the State of Florida. In their counter-claim, defendants Speed Crete and Roy allege that Greene sold them on the idea of entering the seawall construction contracting business, purchasing cement bulkhead materials through Greene from Ruberoid and cementing the joints with a quick drying compound, adaptable for underwater purposes, developed by Speed Crete. Defend-

ants had never engaged in the seawall construction business, so, pursuant to the alleged recommendations of Greene, they hired and associated John R. Rhodes to manage any seawall installations which they might develop.

Thereafter, it is asserted further, Greene assisted Rhodes in preparing bids on seawall projects and forwarded orders for the required bulkhead materials to Ruberoid. In so doing Greene was accorded free access to Speed Crete's files and thus knew the amount of each bid submitted by Speed Crete.

In the meantime, Greene and Rhodes organized the Marine Engineering Construction Corporation in Florida to compete with Speed Crete in the seawall construction business, with the obvious advantage of being able to knowledgeably underbid Speed Crete. On discovering their own employee's interest in Marine Engineering, Speed Crete immediately terminated Rhodes' employment. A seawall project Rhodes had been directing at that time eventually failed to gain acceptance by the landowner, allegedly because when Rhodes had been discharged Speed Crete had no other experienced personnel capable of supervising the job. The loss of $35,024.81 sustained by Speed Crete on that project constitutes the basis for defendants' damages in their counter-claim.

Paragraphs thirteen and fourteen of the amended answer contain the legal allegations supporting the defendants' claim against Ruberoid.

"XIII—Defendants allege, on information and belief, that the said John Greene, while in the employ of petitioner, was approached by the said John R. Rhodes for the purpose of setting up a competing corporation to engage in unfair compe-

---

1. The body of a letter dated January 23, 1962 from J. Folse Roy to Mr. Fred K. Sweeney of Ruberoid reads as follows:
"Mr. Joseph W. Stamps of our Fort Lauderdale office called me this morning and requested I write you guaranteeing all purchases by International Speed Crete Research Corporation or Speed Crete of La. Inc.
"Please let this letter serve as my personal guarantee of any and all purchases made by or through either one of my companies, namely International Speed Crete Research Corporation or Speed Crete of La. Inc."

tition with defendants; that the said John Greene, as an agent and employee of petitioner, had a duty to inform defendants of the improper actions of their employees and that he failed to exercise said duty; that as a result of the tortios [sic] acts of the said John S. Greene, in not only failing to notify defendants of the improper activities of their employee, but in joining with the said John R. Rhodes in the said improper activities, that defendant suffered a loss in the sum of $35,024.81, that said John S. Greene performed said acts while an agent and employee of petitioner, in the scope and course of his employment, and that petitioner is liable, as such, for the losses suffered by defendant.

"XIV—Defendants further allege that petitioner was placed on notice of these facts and that petitioner had notice of same prior to the filing of this petition."

It should be noted here that the claim of defendants is urged against neither Greene nor Rhodes, but solely against Ruberoid.

In urging its motion for summary judgment on the counterclaim, Ruberoid contends that Greene's employment extended only to the solicitation of orders for approval by the home office and that in any event the activities of Greene complained of in the counterclaim are not imputable to his principal since he was acting either fraudulently or adversely to the interests of Ruberoid. On the other hand, defendants contend that the question of whether Greene was acting in the scope of his employment must be resolved by a jury and hence is not a question proper for summary adjudication.

■ At the threshold the Court faces the issue of which state's law to apply in determining whether the counter-claim

states a cause of action against Ruberoid, the principal. Should the counterclaim in this diversity action be characterized as sounding either in tort or in contract, the solution stands equally apparent since all of the allegedly tortious acts were committed in Florida and any breaches of trust or contract were based on contracts having as many, if not more, significant contacts with Florida than any other state. The only relationship with Louisiana stems from Ruberoid's being able to obtain jurisdiction over both Speed Crete and its surety in the Eastern District of Louisiana.[2] Thus, Florida law governs. See generally, Leflar, Conflict of Laws, §§ 110–134, pp. 207–254 (1959 ed.).

■ Florida jurisprudence adopts the general agency principle that knowledge acquired by an agent while acting within the scope of his authority is imputed to his principal. Breeding's Dania Drug Co. v. Runyon, 147 Fla. 123, 2 So.2d 376 (1941). The rule does not stand absolute, though.

"There is * * * a well established exception to this general rule, where the conduct of the agent is such as to raise a clear presumption that he would not communicate to the principal the facts in controversy, as where an agent is in reality acting in his own business or for his own personal interest and adversely to the principal. Knowledge acquired by officers or agents of a corporation while not acting for the corporation but while acting for themselves, is not imputable to the corporation. (footnotes omitted)" Joel Strickland Enterprises, Inc. v. Atlantic Discount Co., Inc., Fla.App., 137 So.2d 627, 629 (1962). See 1 Fla. Jur., Agency § 87.

This exception is well recognized. 3 Am. Jur.2d Agency § 282; 3 C.J.S. Agency § 259; Restatement of Agency 2d, § 282 (1); 104 A.L.R. 1246. The narrow issue

---

**2.** International Speed Crete Research Corporation is a Florida Corporation with its principal place of business in the Parish of Jefferson, State of Louisiana. J. Folse Roy is domiciled in the Parish of Orleans, State of Louisiana.

remaining then is whether the pleadings and affidavits of record reveal a factual conflict as to Greene's activities and their being adverse to the interests of his principal.

The statement of facts set forth above emanates substantially from the affidavit of Speed Crete's vice-president, Melvin Berthelot. That Greene so acted remains undenied by Ruberoid. However, a comparison of the facts in the Strickland case, cited above, with those in the case at bar indicates that Greene's activities would be considered adverse to the interests of Ruberoid. In the Strickland case, Strickland's agent transferred title certificates to, and received payment from, his principal for two automobiles after having already sold the same vehicles to third parties and assigning the conditional sales contracts to a finance company. The finance company attempted to show that the agent's knowledge and participation in the fraud was imputed to the principal, Strickland. The Court there held that such knowledge was not imputable to the principal since the agent was acting "adversely to the interest of his principal." 137 So.2d at p. 630.

The record in the instant case reveals that when Greene conspired with Rhodes to unfairly compete against Speed Crete, Greene not only acted in his own monetary interest, but acted adversely to the interest of his principal by perpetrating a scheme which eventually would result in the loss of a customer and generate a significant amount of ill will towards his principal. The very existence of this lawsuit provides mute evidence of that result. These facts reveal also the basis for the exception to the general "respondeat superior" rule, that is, that an agent's commission of a fraud for his own benefit stands beyond the scope of his employment and cannot, therefore, as a matter of law, be imputed to his principal nor render the principal liable for those acts. It would be contrary to common sense to presume that Greene would have related to Ruberoid the facts of his activity complained of herein by defendants. Ruberoid categorically denies any direct knowledge of, or participation in, Greene's scheme, and defendants have not filed counter-affidavits to show otherwise as they are required to do under Rule 56(e), as amended in July, 1963.[3]

In short, Greene's activities were adverse to the interest of Ruberoid, rendering them without the scope of his employment, and thus not imputable to his principal. Hence, Speed Crete and Roy have asserted no legal grounds for holding Ruberoid liable for Greene's activities. On the basis of the foregoing reasons, plaintiff's motion for summary judgment on the counter-claim must be granted.

It is so ordered.

---

3. Rule 56(e) Federal Rules of Civil Procedure, 28 U.S.C.A. See this Court's discussion of the amendment to Rule 56(e) in Sansone v. Ocean Accident & Guarantee Corp., Ltd., 228 F.Supp. 554, 558 (E.D.La.1964).