Mariana **DEUTSCH** and Abraham Deutsch, Plaintiffs-Appellants,

v.

**HEWES STREET REALTY CORPORATION,** Defendant-Appellee.

No. 78, Docket 29818.

United States Court of Appeals Second Circuit.

Argued Oct. 22, 1965.

Decided March 30, 1966.

Julius Wilk, New York City, for plaintiffs-appellants.

Thomas M. Kelly, Schaffner & D'Onofrio, John J. Langan, New York City, for defendant-appellee.

Before WATERMAN and MOORE, Circuit Judges, and TYLER, District Judge.*

WATERMAN, Circuit Judge:

On November 24, 1961 Mariana Deutsch, while washing dishes, allegedly was injured when, one leg of the kitchen sink in her apartment gave way and fell on her left foot. As a result of this mishap appellant claims she suffered a comminuted fracture of the distal phalanx of the first toe of her left foot with subungual hematoma, extrusion of the nail, swelling, pain, tenderness and discoloration. She further alleges that for some time she was unable to bear weight on the toes of her left foot and that she has continued to suffer pain.

With a view toward opening a small beauty shop upon completion of the prescribed course appellant claims she had been attending a school that trained beauticians. She alleges that as a consequence of the accident she was compelled to abandon her plans to become a beautician because that job requires that one stand for long periods of time. She also claims that for at least one month after the accident she was unable to earn a living as a knitwear mender, the employment she had engaged in prior to her short-lived career as a student beautician. She did, however, return to her job as a knitwear mender in January, 1962, and at present she earns $125 a week performing this work.

Alleging that appellee, Hewes Street Realty Corporation, was negligent in failing properly to maintain her apartment and sink, appellant, on June 28, 1962, commenced this action in the Southern District of New York to recover $25,000 for her alleged personal in-

* Sitting by designation.

juries.[1] She also commenced suit for $25,000 on the same claim in the New York state courts. The complaint in the action she began in the federal court stated that the district court had jurisdiction under 28 U.S.C. § 1332(a).[2] By its answer the appellee denied the existence of a controversy "in excess of $10,000," the minimum amount required to confer federal jurisdiction in diversity suits,[3] and it submitted interrogatories designed to elicit from appellant information concerning the elements of damage for which she sought recovery and the valuation that she placed on those elements. In her replies to these interrogatories appellant claimed special damages totaling only $141.00.[4] Moreover, she indicated that she sought recovery for approximately one month's complete disability; a claim which viewed charitably could not possibly have totaled more than $1,500.[5] Finally, appellant's replies indicated, albeit vaguely, that the balance of the *ad damnum* comprised a claim for damages due to the impairment of appellant's future earning capacity.

Appellee moved to dismiss the action on the ground that appellant's claims fell short of the $10,000 jurisdictional requirement, and that the court therefore lacked jurisdiction over the subject matter of the controversy. The district judge considered this motion in connection with appellant's replies to the interrogatories and in a memorandum opinion granted appellee's motion and dismissed appellant's complaint, stating that the complaint had not been made in good faith because "the claimed injuries and the monetary loss allegedly sustained could not justify a recovery in excess of $10,000." The district judge also noted that appellant simultaneously had filed suit in the state courts, a move that he concluded was designed solely to protect against a jurisdictional dismissal in the federal proceeding. Amplifying his decision that appellant's claim could not justify a recovery in excess of $10,000, he further stated that "in the remote unlikely possibility that a jury would return a verdict in the amount of $10,000 or more, the court in good conscience would be required to set it aside." We reverse the dismissal of the action by the district court and remand for further proceedings.

One cannot underestimate the difficulties involved in developing clear and just rules to assist the district courts in determining whether an amount in controversy in a case exceeds $10,000. The problem is especially difficult because the major considerations tug in precisely opposite directions. On the one hand, with mounting federal case loads, as Chief Judge Lumbard recently has stated, "it has become doubly important that the district courts take measures to discover those suits which ought never to have been brought in the federal court and to dismiss them when the court is convinced to a legal certainty that the plaintiff cannot recover an amount in excess of $10,000." Arnold v. Troccoli,

1. Appellant's husband, Abraham Deutsch, joined a claim for loss of services. But since his claim is distinct from that of appellant the two claims cannot be aggregated in order to exceed the required jurisdictional amount. See Del Sesto v. Trans World Airlines, Inc., 201 F.Supp. 879 (D.C.R.I.1963). Appellant's claim, standing alone, must satisfy this requirement.

2. Section 1332(a) provides that in diversity suits the "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs * * *."

3. We assume federal jurisdiction was otherwise proper.

4. Appellant claimed doctors' bills totaling seventy dollars; she also expended thirty-five dollars for a steel shoe strip, and thirty-six dollars for two pairs of special therapeutic shoes.

5. If we charitably assume that appellant could not work at all for nine weeks and that she might have earned $125 per week during this period had she been able-bodied, she could recover $1125. Perhaps appellant might have earned more as a beautician during this period, but there is no proof of this fact presently in the record.

344 F.2d 842, 845 (2 Cir. 1965). On the other hand, we must not permit a preliminary jurisdictional determination regarding recoverable damages to deprive a plaintiff unfairly of a federal court trial of a case on its merits. The Supreme Court has struck the balance between these considerations thus: "The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288–289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938).

Taking the Court's opinion in St. Paul Mercury Indem. Co., supra, as a point of departure, it might seem that a district court has the power to dismiss diversity suits when the court can conclude either that the sum claimed was not claimed in good faith or that it appears to a legal certainty that the plaintiff cannot recover the amount demanded. The end of clarity will be furthered, however, if the first test is seen to be but a linguistic variant of the second, for, as one authority has noted, "unless it appears to a legal certainty that plaintiff cannot recover the sum for which he prays, how can it be held that his claim for that sum is not in good faith?" Wright, Federal Courts, 95 (1963).

The issue, then, is how best to delimit the rule that the sum claimed by the plaintiff controls unless it appears to a legal certainty that this amount cannot be recovered. We confine our examination of this issue to the present and cognate cases in which a plaintiff is suing for unliquidated damages for an alleged tort.[6] Two rules suggest themselves;

each finds support in the decided cases. Following Turner v. Wilson Line, 242 F. 2d 414 (1 Cir. 1957) at least one other federal court of appeals has held that the district courts have the power to value a plaintiff's claim seeking unliquidated damages and dismiss the plaintiff's case if it does not reasonably appear that the plaintiff can recover in excess of $10,000. See Leehans v. American Employers Ins. Co., 273 F.2d 72 (5 Cir. 1959); Sansone v. Ocean Acc. & Guar. Corp., 228 F.Supp. 554, 558 (E.D.La.1964). In the Third Circuit, however, the rule appears to be that, when unliquidated damages are sought, the district court, except in flagrant cases, should permit the case to proceed rather than attempt to decide the jurisdictional issue in a way that may deprive the claimant of the ordinary incidents of a trial. Wade v. Rogala, 270 F.2d 280 (3 Cir. 1959). At least one court has gone so far as to suggest that in actions at law where trial by jury is a matter of right under the Seventh Amendment the plaintiff is entitled to demand that the issue be submitted to the jury, certainly in cases like the present one in which the problem of evaluation is inextricably bound up with the merits of the case. Shaffer v. Coty, Inc., 183 F.Supp. 662, 666–667 (S.D.Cal.1960); see Smithers v. Smith, 204 U.S. 632, 645, 27 S.Ct. 297, 51 L.Ed. 656 (1907); cf. Byrd v. Blue Ridge Rural Elec. Coop., 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958). But see Sansone v. Ocean Acc. & Guar. Corp., supra, 228 F.Supp. at 558 n. 5. Although Arnold v. Troccoli, supra, 344 F.2d at 846, suggests that this Circuit follows the rule announced in Wade v. Rogala, supra, our court has not yet squarely chosen one approach rather than the other.[7]

The approach represented by Wade v. Rogala, supra, seems preferable for several reasons. First, we are im-

---

6. Of course, the problem arises in other contexts. See Wright, Federal Courts §§ 32–37 (1963).

7. Several cases do suggest that Southern District judges on occasion have chosen the more restrictive approach. See Schroeder v. Nationwide Mut. Ins. Co., 242 F.Supp. 787 (SDNY 1965); Olster v. Kiamesha Concord, Inc., 232 F.Supp. 393 (SDNY 1964).

pressed by the argument that to allow a district court judge to value a plaintiff's claim in a case which involves a demand for unliquidated damages and in which the jurisdictional issue is inextricably bound up with the merits of the controversy is tantamount to depriving the plaintiff of his present statutory right to a jury trial. See also, Wright, Federal Courts 95 (1963). Second, it should be apparent that within the present statutory framework there can be no bright-line solution to this problem. The choice is essentially between a rule on the one hand that allows some cases involving inflated claims for relief to be brought in a federal forum in order to insure access to that forum for all those cases that properly may be brought there, and, on the other hand, a rule that closes the doors to the federal forum in the face of some claims that properly could be brought there in order to insure the denial of the forum to cases involving inflated claims. The present statutory pattern requires that we choose between these alternatives,[8] we feel the wiser choice is to choose the former and more liberal rule, as typified by the decision in Wade v. Rogala, supra. If access to federal district courts is to be further limited it should be done by statute and not by court decisions that permit a district court judge to prejudge the monetary value of an unliquidated claim.

■ Of course district courts are not restricted by the rule adopted here from looking further than the plaintiff's complaint in deciding whether a controversy involves recoverable sums in excess of $10,000. For example, dismissal will be proper when, under applicable law, the damages claimed are not recoverable, Parmelee v. Ackerman, 252 F.2d 721 (6 Cir. 1958), or when the damages claimed, even though recoverable, cannot as a matter of law exceed $10,000. See, e. g.,

Trail v. Green, 206 F.Supp. 896 (D.N.J. 1962). Furthermore, flagrant cases may arise in which, even though the complaint demands unliquidated damages in excess of $10,000, dismissal is proper because the district court can justifiably conclude that the amount demanded was inflated solely in order to gain access to the federal courts. This is the purport of Arnold v. Troccoli, 344 F.2d 842 (2 Cir. 1965). There a suit demanding $6,000 in damages was initially filed in what is now the Civil Court of New York City. Nine months after the state suit was filed the plaintiff successfully moved to discontinue that action on the stated ground that a speedier trial might be had in the federal courts. The plaintiff then commenced a suit in the Southern District of New York in which she demanded $15,000. In affirming Judge Levet's dismissal of the federal action our court stated that the dismissal:

> * * * was grounded on the solid fact that suit had originally been brought for only $6,000 and there was no showing of change of circumstances or developing injuries to explain the inflation of the claim which alone gave color of federal jurisdiction. [344 F. 2d at 846.]

Of course such cases should be dismissed; not because the district judge can conclude that a recovery in excess of $10,000 would not be justified but because there is independent evidence in such cases tending to prove that the claim had been inflated solely to exceed the jurisdictional threshold. See Brown v. Bodak, 188 F.Supp. 532 (S.D.N.Y. 1960). Dismissal in such cases poses no danger that the judge will pass on the merits of issues that properly should be passed upon by the jury.

■ In the present case there is no independent evidence tending to establish that appellant's claim was inflated solely

---

8. Alternatively, it might be argued that every case in which a plaintiff claims damages in excess of $10,000 ought to be allowed to proceed to trial, but that, after trial, any case in which the final award is less than the requisite jurisdictional amount should be dismissed. Although such an approach is possible, it is unlikely that it will be adopted, for it would result in many wasteful jurisdictional dismissals after full trials on the merits.

in order to gain access to the federal courts. True, appellant also filed suit in the New York state courts, but here, as distinguished from Arnold v. Troccoli, supra, the amount demanded in the state proceeding exceeded $10,000. Surely the simple fact that appellant availed herself of her rightful opportunity to commence suit in both forums cannot support the inference that her claim did not exceed $10,000. There are altogether too many other explanations for such conduct.

Here we have a rather uncomplicated tort case in which appellant seeks unliquidated damages for the alleged impairment of her earning capacity, and the amount she demands seems far in excess of any likely verdict she can obtain. Nevertheless, under applicable New York tort law it appears that one who seriously has been preparing oneself for a change from a present vocation to a more remunerative one may, if the injury has impaired or frustrated the likelihood of success in the new vocation, recover non-speculative damages for this damage factor based upon the loss of future probabilities of earning capacity. See Grayson v. Irvmar Realty Corp., 7 A.D.2d 436, 184 N.Y.S.2d 33, 34 (1959); Thornton & McNiece, Torts and Workmen's Compensation, 1959 Survey of N. Y. Law, 34 N.Y.U.Law Review 1538 (1959).

█ Though it may seem unlikely that plaintiff will be able to substantiate that she should recover damages in excess of $10,000, on this record it is not clear to a legal certainty that she cannot do so; we ought not affirmatively decide more than that. Accordingly, we reverse the district court order dismissing the plaintiffs' actions and remand for further proceedings below.

MOORE, Circuit Judge (concurring):

I concur in the opinions of Judge Waterman and Judge Tyler except that portion of Judge Waterman's opinion which refers to applicable New York tort law and that a "damage factor" (not yet developed by any supporting proof) is present here. Until proof is developed on a trial, I am unwilling to speculate in advance whether it is here or not. Nor do I agree that the Grayson case (supra) is applicable. It may well be that future earnings in a field of employment, at most only in a planning stage, would be too speculative under New York law as a foundation for damages. However, there will be ample opportunity for counsel to argue the applicable New York law upon such trial as may take place. There is no present need for pre-judgment.

TYLER, District Judge (concurring):

I concur in the majority view that this matter should be remanded for further proceedings. Indeed, I go further and observe that the majority opinion is one of the clearest discussions to date of the difficult problems inherent in administration of the provisions of 28 U.S.C. § 1332(a).

Nevertheless, I would like to record my view that the disposition of this court should not necessarily deter the trial court upon remand in reaching the same result as that here appealed from. There is room to surmise that upon a more complete record it may turn out that the trial court was correct in dismissing this action for lack of diversity jurisdiction.

In Arnold v. Troccoli, 344 F.2d 842, 2 Cir. 1965 and in the majority opinion here, this court has unmistakably charted the rock and the whirlpool between which a trial judge must steer in reaching a pre-trial determination of whether or not the jurisdictional limit has been met. After two decades or more of development of liberal and full pre-trial procedures, including depositions, interrogatories, pre-trial conferences and the like, however, this is a poor time to conclude that Section 1332(a) is largely unworkable. I am sure that my colleagues do not disagree. But only by encouraging examination into the jurisdictional situation will the statute acquire and maintain significant practical value as intended by Congress. See Arnold v. Troccoli, supra, p. 845.

A cynic might be tempted to say that what we do here today tends to indicate

that Section 1332(a) has no particular practical value in the exigencies of usual trial practice. Yet there have been several recent instances of diligent investigation at the pre-trial stage which sufficiently illustrate that the problem can be met and solved. See Olster v. Kiamesha Concord, Inc., 232 F.Supp. 393 (S.D.N.Y.1964); Arnold v. Troccoli, supra. In Olster, for example, the trial judge, by ordering a further medical examination of plaintiff, was able to ascertain with legal certainty that the personal injury claim of plaintiff could not possibly meet the "claim in controversy" minimum amount. In Troccoli, searching inquiries in pre-trial developed not only the existence of another suit upon the same facts in the City Court of New York with a jurisdictional maximum of $6,000 but also findings establishing that plaintiff's physical condition had markedly improved and thus negating her claim of aggravated injuries.

It is neither necessary nor desirable to discuss here all the potentially available techniques for searching out whether a plaintiff can possibly sustain his burden of establishing federal jurisdiction. The record, however, does suggest some considerations in this case which, if developed further, may be important. For example, plaintiff in her answers to interrogatories has given incomplete and imprecise answers to relevant questions about loss of earnings and other special damages. The medical report of February 19, 1962, approximately 90 days after the alleged accident, contains little or nothing to negate the probability of a relatively quick and complete recovery. It is not inconceivable that full and early recovery would necessarily be conceded by the treating doctor; such a circumstance, in my opinion, would preclude plaintiff's claim that "she was compelled to abandon her plans to become a beautician." Thus, I would not think it unreasonable to require plaintiff to furnish the omitted information and to submit, at her own expense, to another physical examination. In addition, if defendant is represented by an insurance company, the latter may have in its files information in the form of a frank evaluation of this claim by plaintiff and her representatives. Without further elaboration, the point is clear that further investigation here may establish that plaintiff cannot maintain her burden of proving federal jurisdiction.

Two other points deserve comment. First, if the majority opinion is to be understood to declare that the filing of another suit for the same relief in the state court, where the matter in controversy is alleged to exceed $10,000, is totally irrelevant, I would respectfully disagree. I believe that a trial judge has the right and the duty to inquire into the circumstances and good faith of filing two separate suits for the same relief, one in the state court and one in the federal court, even though, as Judge Waterman properly points out, the law theoretically permits this to be done. But inquiry into another suit filed on the basis of the same or similar allegations in a state court might reveal information adduced during the course of that other suit which would cast light upon the federal jurisdictional question. Moreover, where, as here, plaintiff's counsel has effectively conceded that the state court suit was filed only because he had serious doubts about the existence of federal jurisdiction, I would go further and suggest that this could be considered as one circumstance tending to show that the federal action is colorable, even though I would necessarily agree that this concession standing alone is insufficient to support the ultimate conclusion. Still further, although I do not suggest that plaintiff's counsel here contemplated such a technique, the trial court should have the right to inquire whether or not the federal suit has been filed primarily as a device to obtain more liberal discovery, the fruits of which to be used at a state court trial.

Second, although the majority opinion may not have so intended, I would not wish its discussion of those cases suggesting that the Seventh Amendment requires submission of such claims to a

federal petit jury construed as approval thereof. In short, there would not appear to be even a threshold problem of constitutional dimensions for the simple reason that a plaintiff, as, for example, Mrs. Deutsch, clearly has a right to a jury trial in a state court of proper jurisdiction.

In sum, even though today this court firmly adopts the approach laid down by the Third Circuit Court of Appeals in Wade v. Rogala, 270 F.2d 280 (1959), nothing in that rule is at odds with the plain duty of the federal trial courts to winnow out the flagrant and colorable cases, and though the record before us does not certainly establish this case as such, I would not want to see the issue foreclosed upon remand.