

**701**

Julius Wilk, New York City, for plaintiffs.

Schaffner & D'Onofrio, New York City, for defendant, John J. Langan, New York City, of counsel.

## MEMORANDUM

BONSAL, District Judge.

Mrs. Deutsch, the plaintiff, a tenant in defendant's building at 244 Hewes Street, Brooklyn, New York, instituted this action for personal injuries allegedly sustained by her on November 24, 1961. Plaintiff is a citizen of Israel, and defendant is a New York corporation. Diversity of citizenship is relied upon as the basis for jurisdiction (28 U.S.C. § 1332 (a) (2)). When the action came on for pretrial in Part I of this Court, the presiding judge was of the opinion that the action did not meet the jurisdictional requirement of § 1332 as to amount in controversy, and he dismissed the action. Plaintiff appealed, and the Court of Appeals held that on the record before it the

**Mariana DEUTSCH and Abraham Deutsch, Plaintiffs,**

v.

**HEWES STREET REALTY CORPORATION, Defendant.**

No. 62 Civ. 1292.

United States District Court
S. D. New York.

Oct. 13, 1966.

Court could not affirmatively decide that plaintiff could not recover damages in excess of $10,000 (359 F.2d 96 (1966)). Accordingly, the Court of Appeals reversed and remanded for further proceedings.

At the opening of the trial on October 4, 1966, both plaintff and defendant waived a jury, and the case was tried before the Court on October 4-5, 1966. Having heard the evidence, the Court concludes that plaintiff has failed to establish that the matter in controversy exceeds the sum of $10,000, exclusive of interest and costs, and accordingly, dismisses the action for lack of jurisdiction.

Mrs. Deutsch, the plaintiff, is of Romanian origin. She migrated to Israel, becoming a citizen of that country in 1950. In 1960 she went to London, where she resided for a year. While in London, she obtained a license to be a beautician, but never practiced the art. In 1960 her husband arrived in Brooklyn, where he rented an apartment at 244 Hewes Street. In September, 1961, Mrs. Deutsch followed with their two children, aged 14 and 9 respectively. The parties have conceded that the apartment building at 244 Hewes Street is a multiple dwelling within the meaning of Section 78 of the New York Multiple Dwelling Law, McKinney's Consol.Laws, c. 61–A.

Following her arrival in Brooklyn, the plaintiff, Mrs. Deutsch, obtained employment at $125 a week as a knitwear mender with J. P. Z. (Nathan Rubin), on Wythe Avenue, Brooklyn. A short time later, she decided to take a 5-week course at the Hollywood Academy of Beauty Culture in Manhattan with a view to obtaining a beautician's license in New York. She enrolled in the course, continuing with J. P. Z. part time, four hours a day for five days a week, for which she received $4.00 an hour. She hired a sitter eight hours a day for the two children, paying the sitter $1.25 an hour.

Plaintiff testified that on the afternoon of Friday, November 24, 1961, while she was washing dishes, the left leg of the kitchen sink fell on her left big toe.

She testified that she noticed this leg was shaky and reported it to the superintendent before the accident. Her testimony was vague, and her recollection poor. She could not recall when she reported the shaky leg to the superintendent, and she told two different stories as to how she discovered the leg was shaky.

On November 25, the day after the accident, plaintiff went to see Dr. Bloom, a general practitioner with an office on Hewes Street. He saw plaintiff on two occasions, took X rays, and diagnosed her injury as a comminuted fracture of the big toe, which he placed in a temporary splint. He advised plaintiff to stay off her feet.

A few days after the accident, the plaintiff told Mrs. Gordon, defendant's agent at the building, about her accident. Mrs. Gordon testified that she asked Mrs. Deutsch why she had not reported the shaky sink leg to her, and that plaintiff replied that she had never had any trouble with the leg before.

On November 29, 1961, upon Mrs. Gordon's recommendation, Mrs. Deutsch made the first of four or five visits to Dr. Rawler, her last visit being in February, 1962. Dr. Rawler took X rays, prescribed heat treatments and a special shoe, which Mrs. Deutsch obtained. With the use of this shoe, Mrs. Deutsch was able to leave her apartment, and in December, 1961, was in an automobile accident which she said caused the immobilization of her shoulder.

After injuring her toe on November 24, 1961, plaintiff stopped attending beautician school. She has not applied for a beautician's license in New York nor has she worked as a beautician. Sometime in January or in the beginning of February, 1962, plaintiff returned to J. P. Z. and worked there for two years until J. P. Z. went out of business.

For the past year plaintiff has been in partnership with another woman. The partnership owns and operates a shop where wigs (Schietel) are combed and sold for a certain orthodox sect of Jews in Brooklyn. Plaintiff testified that she draws $125–$130 per week and that ad-

ditional profits remain in the business. No evidence was adduced as to the amount of these profits.

Viewing the evidence most favorably to the plaintiff (of course without deciding whether defendant is liable in negligence), the only damages which plaintiff could possibly recover are:

### Special Damages

Doctor's fees:

|  |  |  |
|---|---|---|
| Dr. Bloom | $20 |  |
| Dr. Rawler | 50 |  |
| Special shoe | 35 |  |
| Total | $105 |  |

### Lost Earnings

Plaintiff was earning $80 a week at the time of the accident (four hours a day for five days, at $4.00 an hour). While she was vague as to when she returned to work, the maximum indicated period of absence was ten weeks, which would indicate maximum lost earnings of $800.* This added to her special damages of $105 makes a total of $905.

### Future Earnings

No evidence was introduced at trial from which damages could be assessed for future lost earnings. Indeed, the evidence tends to show that the plaintiff earned at least as much following the accident working for J. P. Z. as she earned before the accident, and in all likelihood is now earning substantially more than she earned before the accident. While Mrs. Deutsch contended that she hoped to obtain employment as a beautician, there is no evidence as to what her compensation might have been had she completed her course and obtained a beautician's license.

### Permanency and Pain and Suffering

■ The one remaining item of damages is compensation for plaintiff's injury and her pain and suffering. Here, the only evidence was plaintiff's testimony that her toe hurts occasionally in bad weather or when she stands too long.

Dr. Tuby, an orthopedic surgeon, testified on Mrs. Deutsch's behalf that he examined her the day before the trial and took an X ray, which showed a healed comminuted fracture of the toe with minimal thickening. He found that her toenail had regrown normally, that there was no restriction of motion in the toe, and stated that the only evidence of pain was subjective, based on statements by Mrs. Deutsch. Dr. Bloom, who first treated Mrs. Deutsch, testified that there was nothing unusual about the injury to her toe. No credible proof was adduced at the trial showing that Mrs. Deutsch's injury is permanent, so that the most she is entitled to is damages for the pain and suffering which she endured at the time and in the days following her accident. By no stretch of the imagination could these damages make up the difference between $905 and $10,000. On the evidence adduced at the trial, under no conceivable circumstances can the amount in controversy exceed $10,000.

■ Since the Court concludes that it lacks subject matter jurisdiction, it does not, and indeed could not, decide whether the plaintiff has established negligence on the part of the defendant and absence of contributory negligence on her own part. These are matters to be determined by a court having jurisdiction of the action.

It may be that this claim was inflated for the purpose of obtaining access to the Federal court. There are many such cases brought here (or, as in this case, brought here as well as in the State courts). The difficulty is that claims are not usually inflated by the injured party, but by his lawyer, who, for one reason or another, concludes that it is worth a try. Some machinery should be devised to preclude such cases from reaching trial with their attendant burdens upon the Court.

The complaint is dismissed.

It is so ordered.

---

* Even if plaintiff's lost earnings are measured on the basis of full time work at $125 a week, her lost earnings would still only be $1,250, making no difference in result in this case.