**Brown JONES, Appellant,**

v.

**Lynda A. LANDRY et al., Appellees.**

No. 24590.

United States Court of Appeals
Fifth Circuit.

Dec. 11, 1967.

James A. Wysocki, New Orleans, La., for appellant.

C. Gordon Johnson, Jr., New Orleans, La., for appellees.

Before RIVES, GOLDBERG and AINSWORTH, Circuit Judges.

RIVES, Circuit Judge:

The district court, after a hearing and oral argument, but without opinion and by a brief order,[1] dismissed this action for lack of jurisdictional amount. We reverse.

Federal jurisdiction was based on diversity of citizenship. The complaint alleged that the amount in controversy exceeds the sum of $10,000.00 exclusive of interest and costs; that the vehicle driven by the defendant ran into the rear of the plaintiff's vehicle upon a public highway; that, "as a direct result of this accident, plaintiff sustained personal injuries and related damages"; and further, "as a direct result of this accident, plaintiff was damaged in the full sum of ONE HUNDRED THOUSAND AND NO/100 ($100,000.00) DOLLARS"; that

the sole proximate cause of the accident and of plaintiff's resulting injuries and damages was the negligent operation of the vehicle driven by the defendant Lynda Landry. The plaintiff demanded a trial by jury.

There is no complaint as to the dismissal of the defendant State Farm Mutual Automobile Insurance Company for lack of the jurisdictional amount, since its liability insurance coverage is only $5,000.00. The individual defendant, Lynda Landry, filed a separate motion to dismiss for lack of jurisdictional amount. That motion cast the burden on the plaintiff to sustain the court's jurisdiction by competent proof.[2]

The only evidence offered by either party consisted of certain unsworn physicians' reports and the answers of the plaintiff to the defendant's interrogatories, which were not sworn to by the plaintiff himself, but by his attorney on information and belief. There was, however, no objection to the evidence and both parties considered this unsworn material to be properly before the court.[3]

The test of the amount in controversy is, of course, not the amount ultimately recovered but the amount claimed by the plaintiff in good faith.[4] As was said in the leading case of St. Paul Mercury Indemnity Co. v. Red Cab

---

1. "IT IS ORDERED BY THE COURT that the motion of defendant, Lynda C. Landry, to dismiss complaint for lack of jurisdictional amount be, and the same is hereby, GRANTED."

2. McNutt v. General Motors Acceptance Corp. of Indiana, 1936, 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135; Kvos, Inc. v. Associated Press, 1936, 299 U.S. 269, 57 S.Ct. 197, 81 L.Ed. 183; 1 Barron & Holtzoff, Federal Practice & Procedure, Rules ed. § 24, p. 107; 1 Moore's Federal Practice 2nd ed., ¶ 00.92 [3], pp. 838–840.

3. The appellee's (defendant's) brief concedes:

   "The District Judge was presented with the following evidence upon which to base his decision:

   "(1) The allegations of the plaintiff's complaint

   "(2) Interrogatories addressed by defendant to plaintiff

   "(3) Plaintiff's answers to defendant's interrogatories

   "(4) Narrative medical report of Warren O. Coleman, M.D., a partner of Leslie M. Guidry, M.D., concerning their treatment of the plaintiff dated May 18, 1966

   "(5) 'Hospital Benefit Blank' containing 'Statement of Physician' dated June 25, 1965 by Louis A. Polizzi, M.D.

   "(6) Copy of x-ray report of Jos. V. Hopkins, Jr., M.D., dated June 24, 1965

   "(7) Copy of 'Physicians and Surgeons Report' of Dr. Polizzi dated April 20, 1966."

4. 1 Moore's Federal Practice 2nd ed., ¶ 0.91, pp. 825–828; accord, 28 U.S.C.A. § 1331(b), § 1332(b).

Company, 1938, 303 U.S. 283, 288–289, 58 S.Ct. 586, 590, 82 L.Ed. 845:

> "The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction. Nor does the fact that the complaint discloses the existence of a valid defense to the claim. But if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed."

Again in that case, it was said:

> "His good faith in choosing the federal forum is open to challenge not only by resort to the face of his complaint, but by the facts disclosed at trial, and if from either source it is clear that his claim never could have amounted to the sum necessary to give jurisdiction there is no injustice in dismissing the suit." 303 U.S. at 290, 58 S.Ct. at 591.

■ The test of the plaintiff's "good faith" is not his subjective state of mind but a very strict objective standard. As was stated in Horton v. Liberty Mutual Ins. Co., 1961, 367 U.S. 348, 353, 81 S.Ct. 1570, 1573, 6 L.Ed.2d 890:

> "The general federal rule has long been to decide what the amount in controversy is from the complaint itself, unless it appears or is in some way shown that the amount stated in the complaint is not claimed 'in good faith.' In deciding this question of good faith we have said that it 'must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.' "

Thus, there is but one test; good faith and legal certainty are equivalents rather than two separate tests. Wright, Federal Courts, § 33, p. 95. The burden which the plaintiff bore was simply to prove his good faith measured by the standard of legal certainty that the plaintiff cannot recover as much as the jurisdictional amount.

The answers of the plaintiff to the interrogatories propounded by the defendant were to the effect that "plaintiff sustained severe abrasions and contusions of both legs * * * strain of back muscles * * * impairment of arterial circulation in the left lower extremity * * * aggravation of femoral artery." The eleventh interrogatory and its answer read as follows.

> "11—Please state whether or not you are claiming any of your injuries are of a permanent nature and, if so, which of said injuries."

> "11. Yes, injuries are of such a nature that plaintiff has never been able to resume gainful employment as a result of injuries received on June 23, 1965."

Plaintiff's answers further disclose that "plaintiff never returned to work subsequent to date of accident, June 23, 1965. Prior to that had worked for Southern Railroad for twenty-three years and was receiving $482.17 a month."

Letters and reports from the several physicians attached to the defendant's memorandum in support of the motion to dismiss show no more than "contusions and abrasion—post scalp (R) Leg (L) Leg Resulting from Auto Accident," "Laceration posterior scalp and abrasion right anterior leg, and left leg." One of the reports also notes that "the patient will never be able to work," and "hypertension and cystolic murmur," noted to be not accident connected. Another report notes "gangrene of his left foot resulting from arteriosclerosis obliterans and this has no connection whatsoever

with any automobile accident." On motion for rehearing of the dismissal, the plaintiff offered a letter from another physician who had not examined the plaintiff but nonetheless expressed the view that, "While it is not possible to be certain that the accident was the only cause of the femoral artery obstruction, there is Dr. Polizzi's statement that Mr. Jones had sustained severe lacerations of the scalp and contusions and abrasions of both legs. From this I would infer that trauma was applied in many areas to Mr. Jones's body. It is highly probable that the trauma aggravated a pre-existing condition of arteriosclerosis and therefore made it much more likely for Mr. Jones to have a femoral artery obstruction than would have been the case without this trauma." The district judge denied the motion for rehearing.

The strictness with which the "legal certainty" test is applied by the Supreme Court is illustrated by the case of Bell v. Preferred Life Assur. Society, 1943, 320 U.S. 238, 64 S.Ct. 5, 88 L.Ed. 15. There, the complaint alleged that the plaintiff had been induced to purchase a certificate of insurance through fraudulent misrepresentations by the defendant's agent as to its value, and claimed $200,000.00 as actual and punitive damages. The record showed that the plaintiff had paid $202.35 on the certificate and that the certificate, upon death or final surrender, had a maximum potential value of $1,000.00. Nonetheless, the court held that it was not apparent to a legal certainty that the plaintiff could not recover in addition sufficient punitive damages to make up the then requisite $3,000.00, and that it was no answer to contend that a verdict, if rendered for that amount, would be excessive and set aside for that reason.

Again, in a much earlier case, Barry v. Edmunds, 1886, 116 U.S. 550, 559, 6 S.Ct. 501, 506, 29 L.Ed. 729, the Court said:

"It might happen that the judge, on the trial or hearing of a cause, would receive impressions amounting to a moral certainty that it does not really and substantially involve a dispute or controversy within the jurisdiction of the court. But upon such a personal conviction, however strong, he would not be at liberty to act, unless the facts on which the persuasion is based, when made distinctly to appear on the record, create a legal certainty of the conclusion based on them."

The defendant relies upon two Fifth Circuit cases Leehans v. American Employers Ins. Co., 1959, 273 F.2d 72; Matthiesen v. Northwestern Mutual Ins. Co., 1961, 286 F.2d 775. Purporting to follow those decisions, several district judges have granted motions for dismissal after hearing evidence as to the extent of plaintiff's injuries.[5]

Referring to those two Fifth Circuit cases and to the First Circuit case of Turner v. Wilson Line of Mass., Inc., 1957, 242 F.2d 414, Professor Wright has said:

"Such action comes dangerously close to depriving plaintiff of his right to a jury trial as to damages. The sounder result seems that of the Third Circuit, which holds that where the damages recoverable turn on intangible factors to be weighed ultimately by the jury, it is not justifiable to say in advance that a verdict in excess of the jurisdictional amount would not be returned, or would be set aside."

Wright, Federal Courts § 33, p. 95.

The Third Circuit case to which Professor Wright referred is Wade v. Rogala, 3 Cir. 1959, 270 F.2d 280, where that court said:

"To determine in limine that the plaintiff could not produce evidence to support a verdict in excess of $3,000 would not be justifiable; nor could it be said that a verdict in excess of $3,000 should be set aside before it was ren-

---

5. See Sansone v. Ocean Accident & Guarantee Corp., E.D.La.1964, 228 F.Supp. 554; Gordon v. Daigle, W.D.La.1964, 230 F.Supp. 819; Thomas v. Travelers Insurance Co., E.D.La.1966, 258 F.Supp. 873.

dered. * * * * Indeed, since the issue of jurisdictional amount in this case is so closely tied to the merits of the cause, insistence upon evidence with respect thereto must be limited ' "lest, under the guise of determining jurisdiction, the merits of the controversy between the parties be summarily decided without the ordinary incidents of a trial, including the right to a jury." ' * * * * The necessary choice, except in the flagrant case, where the jurisdictional issue cannot be decided without the ruling constituting at the same time a ruling on the merits, is to permit the cause to proceed to trial. * * * * Even then, unless the court were convinced that the plaintiff was never entitled to the jurisdictional amount, and his claim was therefore asserted only for the purpose of gaining jurisdiction, dismissal on jurisdictional grounds would not be justified." 270 F.2d at 285.

In a recent case, the Second Circuit has followed the Third Circuit, saying:

> The approach represented by Wade v. Rogala, supra, seems preferable for several reasons. First, we are impressed by the argument that to allow a district court judge to value a plaintiff's claim in a case which involves a demand for unliquidated damages and in which the jurisdictional issue is inextricably bound up with the merits of the controversy is tantamount to depriving the plaintiff of his present statutory right to a jury trial. See also, Wright, Federal Courts 95 (1963). Second, it should be apparent that within the present statutory framework there can be no brightline solution to this problem. The choice is essentially between a rule on the one hand that allows some cases involving inflated claims for relief to be brought in a federal forum in order to insure access to that forum for all those cases that properly may be brought there, and, on the other hand, a rule that closes the doors to the federal forum in the face of some claims that properly could be brought there in order to insure the denial of the forum to cases involving inflated claims. The present statutory pattern requires that we choose between these alternatives, we feel the wiser choice is to choose the former and more liberal rule, as typified by the decision in Wade v. Rogala, supra. If access to federal district courts is to be further limited it should be done by statute and not by court decisions that permit a district court judge to prejudge the monetary value of an unliquidated claim."

Deutsch v. Hewes Street Realty Corp., 2 Cir. 1966, 359 F.2d 96, 99–100.

■■ We do not read the *Leehans* and *Matthiesen* cases as departing from the rule advocated by the Third Circuit and the Second Circuit, except possibly to the extent of holding that when it can be conclusively determined in advance that the pain, suffering, and other intangible factors are so slight that no substantial evidence can be offered to support a verdict for as much as the jurisdictional amount, then the legal certainty test is met. So reading those cases, we adhere to their holdings with the caveat that every case is dependent upon its own peculiar facts.

■ The facts of the present case do not justify a holding that a jury will not with reason [6] be able to return a verdict for the plaintiff for as much as the jurisdictional amount. The defendant virtually concedes that that would be true if the jury could consider the plaintiff's claim of "impairment of arterial circulation" or "aggravation of femoral artery," but contends that the opinion of the physicians that that condition was not accident connected is conclusive. In the defendant's brief it is stated: "The

---

6. See the test of the sufficiency of evidence to support a jury's verdict prescribed by Lavender v. Kurn, 1946, 327 U.S. 645, 653, 66 S.Ct. 740, 90 L.Ed. 916, and of other cases collected in Liberty Mutual Ins. Co. v. Falgoust, 5 Cir., 386 F.2d 248, decided Nov. 17, 1967.

trial judge did not make a finding of proximate cause as this was done by highly qualified and trained vascular surgeons" (Appellee's Brief, p. 4) and again " * * * plaintiff complains that the trial judge made a decision as to proximate causation. This is not *true;* pure and simple. This determination was made by qualified medical specialists. The circulatory condition found by Dr. Polizzi and treated by Drs. Guidry and Coleman had no relation at all to the accident in question." (Appellee's Brief, p. 8). The Supreme Court has, however, made it clear that the legal determination of the question of causation is not to be made by the physicians but by the jury.

"The jury's power to draw the inference that the aggravation of petitioner's tubercular condition, evident so shortly after the accident, was in fact caused by that accident, was not impaired by the failure of any medical witness to testify that it was in fact the cause. Neither can it be impaired by the lack of medical unanimity as to the respective likelihood of the potential causes of the aggravation, or by the fact that other potential causes of the aggravation existed and were not conclusively negated by the proofs. The matter does not turn on the use of a particular form of words by the physicians in giving their testimony. The members of the jury, not the medical witnesses, were sworn to make a legal determination of the question of causation.[2] They were entitled to take

"2. For a discussion of the reluctance of medical opinion to assign trauma as the cause of disease, and of the varying medical and legal concepts of causation, see Small, Gaffing at a Thing Called Cause: Medico-Legal Conflicts in the Concept of Causation, 31 Tex. L.Rev. 630.

all the circumstances, including the medical testimony into consideration."

Sentilles v. Inter-Caribbean Shipping Corp., 1959, 361 U.S. 107, 109–110, 80 S.Ct. 173, 175, 4 L.Ed.2d 142.

The district court erred in dismissing this action for lack of jurisdictional amount, and its judgment is

Reversed.