Landis B. **GULLETT** and B. B. Gullett

v.

**QANTAS AIRWAYS LIMITED.**

No. 74–205–NA–CV.

United States District Court,
M. D. Tennessee,
Nashville Division.

May 19, 1975.

William Lamar Newport, Nashville, Tenn., for plaintiffs.

Tyree B. Harris, Nashville, Tenn., for defendant.

## MEMORANDUM

MORTON, District Judge.

Plaintiffs, residents of Nashville, Tennessee, bring suit against Qantas Airways Lim-

ited, an Australian corporation. Plaintiffs seek to recover $75,000.00 for their financial losses and emotional distress allegedly incurred as a result of the conduct of defendant's agents, which conduct is alleged to amount to a wanton and willful breach of the duty of care owed by a common carrier to its passengers.

Plaintiffs allege that they purchased from a travel agent, Travel, Inc., in Nashville, Tennessee, an airline ticket providing for air transportation as part of a tour to the South Pacific. The airline ticket issued was an American Airlines ticket, one of the flight coupons of which provided for transportation on Qantas flight # 565 for November 6, 1973, from Nandi, Fiji Islands to Sydney, Australia. The ticket was issued by Travel, Inc., through the use of an American Airlines ticket plate.

On November 5, 1973, the mother of Landis B. Gullett died unexpectedly in Nashville, Tennessee, and a relative of the plaintiffs, Colonel Charles Evers, attempted to contact plaintiffs in Nandi, Fiji Islands, by telephoning Qantas representatives at the Nandi Airport. Plaintiffs allege that the Qantas employees involved were aware of the emergency message and in a position to relay it to the plaintiffs well before the departure of the Qantas flight for Sydney, but that they willfully and wantonly did not do so until after the aircraft was en route for Sydney. Immediately after the aircraft became airborne, one of the Qantas stewardesses allegedly handed plaintiffs a handwritten note which stated that plaintiffs were facing a grave emergency but which failed to set forth the nature of the emergency in question. Plaintiffs allege that they were thus forced to needlessly journey some five and one-half hours to Sydney, unnecessarily incurring the expense of such flight, to defendant's pecuniary benefit, and suffering "severe anxiety and mental distress." The Gulletts had to remain in Sydney for some 22 hours before the next available flight back to the United States.

Defendant corporation, appearing specially in this cause, has filed a motion to dismiss and an amended motion to dismiss, based on the following grounds: (1) that defendant is not subject to service of process in this cause on the ground that it is not doing business in Tennessee, and therefore process may not be had upon defendant under T.C.A. § 20–235; and (2) that this litigation arose out of a claim wholly outside Tennessee and having no connection with Tennessee. In the present state of the record, there is no assertion that the complaint fails to assert a cognizable cause of action.

■ Jurisdiction of this cause is properly founded upon diversity of citizenship, 28 U.S.C. § 1332(a)(2). The court notes that defendant raises some question in its brief concerning the jurisdictional amount; but inasmuch as it does not appear to a legal certainty that the plaintiffs' recovery cannot exceed $10,000, the complaint does not fail on this ground. *Jones v. Landry*, 387 F.2d 102 (5th Cir. 1967); *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938).

■ It is now well settled law in the Sixth Circuit that, subject to the requirements of the Due Process Clause of the Fourteenth Amendment, federal courts must look to the law of the appropriate state to determine the extent of their personal jurisdiction in diversity cases. *In-Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 224 (6th Cir. 1972); *Velandra v. Regie Nationale des Usines Renault*, 336 F.2d 292, 294 (6th Cir. 1964); *Smartt v. Coca-Cola Bottling Corp.*, 318 F.2d 447, 448 (6th Cir. 1963); *Elliot Co. v. Caribbean Utilities Co. et al.*, 513 F.2d 1176 (6th Cir., 1975). The law of Tennessee is the appropriate state law to be applied in determining this court's personal jurisdiction in this cause. T.C.A. § 20–235, the Tennessee "long arm" statute, is the statute to which this court must initially address itself in determining the issue of personal jurisdiction over this defendant.

T.C.A. § 20–235 provides as follows:

"*20–235. Jurisdiction of persons unavailable to personal service in state—Classes*

*of actions to which applicable.*—Persons who are nonresidents of Tennessee and residents of Tennessee who are outside the state and cannot be personally served with process within the state are subject to the jurisdiction of the courts of this state as to any action or claim for relief arising from:

(a) The transaction of any business within the state;

(b) Any tortious act or omission within this state;

(c) The ownership or possession of any interest in property located within this state;

(d) Entering into any contract of insurance, indemnity, or guaranty covering any person, property, or risk located within this state at the time of contracting;

(e) Entering into a contract for services to be rendered or for materials to be furnished in this state.

(f) Any basis not inconsistent with the constitution of this state or of the United States.

'Person' as used herein shall include corporations and all other entities which would be subject to service or process if present in this state. Any such person shall be deemed to have submitted to the jurisdiction of this state who acts in the manner above described through an agent or personal representative."

Defendant contends that under the above statute, it is required that the cause of action arise out of an activity in Tennessee. The court does not agree with this interpretation of the Tennessee long arm statute.

T.C.A. § 20–235 was amended by the addition of subsection (f) in April of 1972. It is the position of the defendant that subsection (f) did virtually nothing to change the meaning of the long arm statute; that it was ". . . solely a legislative reaffirmation of the holding in *South-*

*ern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374 (6th Cir. 1968) that:

" '[F]or causes of action arising out of a non-resident defendant's business activities in the State, the Tennessee legislature intended to extend the jurisdiction of Tennessee courts over a non-resident to the full extent permitted by the Fourteenth Amendment.' 401 F.2d at 377." (Defendant's Reply Memorandum Brief in Support of Motion to Dismiss, p. 20.)

The court rejects this contention. At the time *Mohasco* was decided, the above quote from that case was a valid interpretation of the Tennessee long arm statute. Subsection (f) had not been added to the statute, and subsections (a) through (e) all contain the limitation "within this state" or "in this state."

However, with the addition of subsection (f), the legislature expanded the jurisdiction of the courts of this state to "any action or claim for relief arising from . . . (f) any basis not inconsistent with the constitution of this state or of the United States." The language of the statute is clear. There is no mention of any "within the state" limitation in subsection (f), and one can only assume that it was the intent of the legislature not to include such a restriction in that subsection.

The available legislative history on subsection (f) is scanty.[1] The bill adding subsection (f) to T.C.A. § 20–235 (Senate Bill No. 1640, Public Acts Ch. 689, § 1) was apparently passed in the Senate without discussion. Representative Burnett, in introducing the bill in the House, stated:

" . . . primarily what this bill does is expand the right of our Tennessee citizens to bring suit under our long arm statute against non-residents outside of the state. As you know, we have a long arm statute in Tennessee, and some of our local court decisions have somewhat thwarted the effect of that by limiting the use of that particular section. This

---

1. There is no record in the Tennessee State Archives of any Committee meetings or discussions with regard to this bill. The court is informed by officials at the Archives that, except for the statement by Mr. Burnett, there is no other material available which would shed light on the legislative intent of this bill.

bill will do no more than give the Tennessee citizens—the people of our state—the right to additional process *and additional reasons for service of process* in accordance with the Constitution of the United States." (Tennessee Archives, Legislative Recordings, April 4, 1972, H–195) (emphasis supplied)

■ Additionally, T.C.A. § 20–240 provides that the long arm statute is remedial in nature and is to be liberally construed. Thus, the clear language of the statute, its legislative history, and T.C.A. § 20–240 convince this court that subsection (f) expands the jurisdiction of Tennessee courts under T.C.A. § 20–235 to the full constitutionally permissible limits. This conviction is supported by the Tennessee Supreme Court's language in *W. B. Dunavant & Co. v. Perkins*, 498 S.W.2d 905 (Sup.Ct.1973), to the effect that:

> ". . . under paragraph (f), the courts of this state have jurisdiction to the full extent constitutionally permitted." at 909

Federal courts have likewise interpreted subsection (f) as expanding the long arm statute to its constitutional limits. In *Walker v. Kawasaki Motors Corporation*, 62 F.R.D. 607, 610 (E.D.Tenn.1973), Judge Taylor noted: "This addition, therefore, made clear the legislative intention to extend the Tennessee Act, for all purposes, to the limits of the Due Process Clause."

The court does not propose to discuss the cases pertaining to T.C.A. § 20–235 which were decided before the addition of subsection (f) to the statute, as this subsection changes the statute so substantially that a discussion of prior cases would not be of any particular assistance.

Having determined that the Tennessee long arm statute confers jurisdiction to the full extent allowable under the Due Process Clause of the Fourteenth Amendment, we now turn to the question of what limits the Due Process Clause imposes on the exercise of jurisdiction by state courts over non-resident defendants.

The Supreme Court of the United States has decided five cases which are of significance in delineating the limits placed upon *in personam* jurisdiction by the Due Process Clause. These cases, sometimes referred to as "the long arm quintet" (see *Gelineau v. New York University Hospital*, 375 F.Supp. 661 (D.N.J.1974)) include: *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952); *Travelers Health Asso. v. Virginia*, 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154 (1950); *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); and *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

*International Shoe Co., supra,* is the leading case in establishing the boundaries within which states may exercise jurisdiction over non-resident defendants. In this case, the Supreme Court set forth the "minimum contacts" test, which embodies the accepted approach to jurisdictional due process questions:

> ". . . due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." 326 U.S. 316, 66 S.Ct. 158.

This test, while a valuable concept, is incapable of any precise definition. *Prior to the addition of subsection (f),* the Sixth Circuit Court of Appeals, in reference to T.C.A. § 20–235, formulated the following three-pronged test for determining the outer limits of *in personam* jurisdiction based on a single act:

> "First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state

to make the exercise of jurisdiction over the defendant reasonable." *Southern Machine Company v. Mohasco Industries, Inc.,* 401 F.2d 374, 381 (6th Cir. 1968). It is important to note that at the time of the *Mohasco* decision, T.C.A. § 20–235 was a "single act" statute. The *Mohasco* court specifically recognized this, as indicated in the following language:

"In considering this Act, we can put to one side cases where the activities of a corporation are sufficient to justify the assumption of jurisdiction even for causes of action arising outside the forum state. Cf. *Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952). The Tennessee Long Arm Statute is a 'single act' statute by which the State only purports to assume jurisdiction over causes of action arising out of the defendant's activities in the State." 401 F.2d 377.

As noted previously, with addition of subsection (f), the Tennessee long arm statute was changed from a "single act" statute to a "minimum contacts" statute. Thus, while the *Mohasco* test is properly applicable to a single act statute, it is too narrow and restrictive for the present Tennessee long arm statute.

■ The test for determining the outer limits of *in personam* jurisdiction under a "minimum contacts" statute is somewhat more amorphous than the *Mohasco* test. The amount and kind of activities which must be carried on by the foreign corporation in the forum state so as to make it reasonable and just to subject the corporation to the jurisdiction of that state should be determined according to the particular facts in each case. *Perkins v. Benguet Consolidated Mining Co., supra.* See also *Velandra v. Regie Nationale des Usines Renault, supra.* The test is one of "general fairness to the corporation," *Perkins v. Benguet, supra,* 342 U.S. at 445, 72 S.Ct. 413, and this must of necessity involve some subjective value judgment by the courts.

Nonetheless, it is possible to define certain elements which are to be considered in determining whether or not the requisite "minimum contacts" are present in a given case. The following remarks by Judge Blackmun (now Mr. Justice Blackmun) are of assistance in this respect:

" . . . at one time or another in the opinions, three primary factors, namely, the quantity of the contacts, the nature and quality of the contacts, and the source and connection of the cause of action with those contacts, are stressed and . . . two others, interest of the forum state and convenience, receive mention. . . . The Supreme Court has certainly not indicated that all five of these factors must be present in substantial degree for jurisdiction to be constitutionally effected." *Aftanase v. Economy Baler Co.,* 343 F.2d 187, 197 (8th Cir. 1965).

See also *Odom v. Thomas,* 338 F.Supp. 877 (S.D.Tex.1971), similarly citing these criteria for the minimum contacts test.

With this background in mind, we turn now to the facts in this case which are pertinent to the determination of whether the requisite minimum contacts with the State of Tennessee are present in this case, so that exercise of jurisdiction over defendant corporation would be fair and reasonable.

Defendant is an Australian corporation, incorporated in Queensland, Australia. The corporation is an airline, engaged in the business of transporting passengers for hire in international travel. Qantas apparently does not have any flight connections in Tennessee, but does serve cities in several other American states.

Qantas is a party to the International Air Transport Association (IATA) Interline Traffic Agreement, which provides, inter alia, that each of the parties to said agreement may issue tickets on other airlines who are parties thereto. Qantas is also a party to the Air Traffic Conference (ATC) Standard Ticket and Area Settlement Plan, which is similar in nature to the IATA agreement. When a ticket is issued in Tennessee by an IATA or an ATC agent providing for a segment of the ticketed trans-

portation on Qantas Airways, the agent transfers the funds to the appropriate area IATA or ATC clearing house (located outside of Tennessee), which then remits the funds for the Qantas segment to the Qantas office in San Francisco. (Answer to Plaintiffs' Interrogatories, 1. J.(2) ). Qantas tickets issued through IATA or ATC agents are contracts of carriage, which are binding upon Qantas. (Answer to Plaintiffs' Interrogatories, 7.).

The plaintiffs purchased their tickets through Travel, Inc., a Nashville travel agency which is authorized to issue tickets for Qantas flights in accordance with the IATA agreement referred to above.

It appears that Qantas does advertise and actively solicit business in Tennessee. Qantas is listed in the telephone directory of Knoxville and Memphis, Tennessee, in both the "white pages" and the "yellow pages." The number listed for Qantas in these directories is a toll-free number which connects the caller with a telephone reservations and sales office in San Francisco, California. Although defendant claims that these listings are not advertisements, it admits that it paid $304.80 to obtain these listings in 1974. (Answer to Plaintiffs' Interrogatories, 1. F.(1) ).

According to defendant, its dollar volume of ticket sales in Tennessee for passage on Qantas flights was $49,357.00 for 1972/73 and $91,529.00 for 1973/74.

As part of its national advertising program, Qantas places advertisements in National Geographic, Time, U.S. News and World Reports, and Sports Illustrated, national magazines which are circulated in Tennessee. Defendant admits that it is contemplated by Qantas that these advertisements will be distributed in Tennessee. (Answer to Plaintiffs' Interrogatories, 2. E., 3. A.).

Qantas supplies Tennessee travel agents with Qantas advertising brochures, and Qantas posters are supplied upon request to Tennessee travel agents. Also, Qantas employees infrequently visit Tennessee for the purpose of making sales calls on various travel agents.

In short, it appears from the above that Qantas does seek, in a continuous and systematic manner, to benefit from the sale of tickets to customers in Tennessee, and that it actually does benefit from such sales. Yet the defendant corporation seeks to escape jurisdiction by its claims that these sales are not made through its agents, but through independent contractors. The court has some doubts about defendant's theory that travel agents selling Qantas tickets in Tennessee would not be agents of Qantas. See *Del Sesto v. Trans World Airlines, Inc.*, 201 F.Supp. 879 (D.R.I.1962). However, pretermitting that question and assuming arguendo that defendant's contention in this regard is correct, this fact should not serve to immunize Qantas from suit in this state. As the Fifth Circuit Court of Appeals noted in *Curtis Publishing Company v. Golino*, 383 F.2d 586 (5th Cir. 1967):

" . . . [C]learly it would not comport with notions of fair play and substantial justice to allow a business enterprise, whose overriding business purpose is maximum exploitation of the national market, to be free from suit as a matter of law . . . simply because physical contacts . . . had been reduced to a minimum. . . . The fact that physical contacts are minimized through the use of independent contractors and distributors does not alter the basic existence of . . . [a defendant's] involvement in, and its pecuniary benefit from, a full exploitation of the . . . market." at 591, 593.

The defendant also proffers the argument that the cause of action in this case sounds in tort and not breach of contract; thus, the cause of action would not arise directly out of defendant corporation's activities in this state, because ticket sales and advertising are the only activities which are conducted by Qantas in the State of Tennessee. Under the current state of the record, the court is not prepared at this time to rule that there was no breach of contract. However, assuming arguendo that the cause of action does lie in tort, the

fact that this lawsuit did not arise directly from defendant's activities within this state would not serve as a constitutional bar to the exercise of jurisdiction by this state over Qantas. Under *Perkins v. Benguet Consolidated Mining Co., supra,* a foreign corporation may be held subject to suit on a cause of action entirely unrelated to its activities within a state. See also *Lee v. Walworth Valve Company,* 482 F.2d 297 (4th Cir. 1973).

In the case at bar, the cause of action cannot fairly be said to be entirely unrelated to defendant's activities within this state. An injury occurring on a flight which was contracted and paid for within this state cannot be said to be wholly unrelated to the sale of the ticket. There is an obvious logical nexus between defendant's exploitation of the Tennessee market and an injury occurring on a flight which was contracted for as a result of the exploitation.

■ Under the totality of the circumstances in this case, the court does not feel that it would offend the traditional notions of fair play and substantial justice to subject this corporate defendant to a judgment *in personam.* To the contrary, it would not be fair and just to allow this corporate defendant to actively solicit business and contract with persons in Tennessee and then claim immunity when a Tennessee customer is injured on the very flight he contracted for in Tennessee. The quantity of the contacts with the State of Tennessee, their nature and quality, and their connection with the cause of action are sufficient to meet the "minimum contacts" test set forth in *International Shoe, supra.*

As an additional consideration, the court notes that the wrongful act alleged to have occurred did not take place within the United States. Plaintiffs are both residents of Tennessee, the flight contract was made in Tennessee, and defendant has purposefully entered the commercial market in Tennessee and maintains significant business contacts in this state. If any state has a logical connection with the cause of action in this case, it is Tennessee. Consideration

of these factors adds to the court's conviction that, given the equities of the situation, it is not unreasonable to require defendant corporation to defend this lawsuit in Tennessee. *Product Promotions, Inc. v. Cousteau,* 495 F.2d 483 (5th Cir. 1974); *Lee v. Walworth Valve Company, supra.*

■ Defendant corporation, in its "Reply Memorandum Brief in Support of Motion to Dismiss," urges that T.C.A. § 20–220 is a substantive bar to the cause of action in this case. T.C.A. § 20–220 provides:

*"20–220. Foreign corporations subject to actions.*—Any corporation claiming existence under the laws of the United States or any other state, or of any country foreign to the United States, or any business trust found doing business in this state, *shall be subject to suit here to the same extent that corporations of this state are by the laws thereof liable to be sued, so far as relates to any transaction had, in whole or in part, within this state, or any cause of action arising here, but not otherwise.* Any such corporation or trust having any transaction with persons, or having any transaction concerning any property situated in this state, through any agency whatever, acting for it within the state, shall be held to be doing business here within the meaning of this section." (emphasis supplied).

Under the current state of the record in this cause, it would be premature to determine that the cause of action does not relate to the transaction had in this state, i. e., the sale of the ticket. Moreover, it does not appear to this court that T.C.A. § 20–220 is a substantive bar.

In *Gallaher v. Chemical Leaman Tank Lines, Inc.,* 367 F.Supp. 1063 (E.D.Tenn. 1973), Judge Wilson held that T.C.A. § 20–220 and Tennessee Rule of Civil Procedure Rule 4.04(4) are procedural alternatives. This court accepts the ruling of Judge Wilson. Additionally, the court notes that to hold otherwise would undermine the intent of the Tennessee long arm statute.

Rule 4.04(4) provides that service of process can be had:

**498**

"Upon a domestic corporation, or a foreign corporation doing business in this state, by delivering a copy of the summons and of the complaint to an officer or managing agent thereof, or to the chief agent in the county wherein the action is brought, *or by delivering the copies to any other agent authorized by appointment or by law to receive service on behalf of the corporation.*" (emphasis supplied)

The Committee Comment to Rule 4.04(4) provides: "This clause preserves statutory provisions authorizing service upon the secretary of state or other officer where such service is authorized by statute."

T.C.A. § 20–236 provides that service of process shall be made upon the secretary of state in causes where jurisdiction is assumed under the long arm statute. Thus, T.C.A. § 20–236, in accordance with Rule 4.04(4), provides a procedural alternative for obtaining service on defendant corporation in this cause.

Defendant corporation has made no contention with respect to the issue of adequate notice, and the court does not purport to address this issue.

For the above reasons, the court denies defendant corporation's motion to dismiss, as amended. An appropriate order will be entered.