Eliza E. LADD, Plaintiff,

v.

KLM ROYAL DUTCH AIRLINES, Defendants.

No. 78 Civ. 1113.

United States District Court, S. D. New York.

Sept. 1, 1978.

Boult, Cummings, Conners & Berry, Nashville, Tenn., for plaintiff; John T. Conners, Jr., Kenneth H. King, Jr., Nashville, Tenn., of counsel.

Condon & Forsyth, New York City, Dodson, Harris, Robinson & Aden, Nashville, Tenn., for defendant KLM; George N. Tompkins, Jr., Lawrence Mentz, New York City, Tyree B. Harris IV, Nashville, Tenn., of counsel.

OPINION

ROBERT J. WARD, District Judge.

Defendant KLM Royal Dutch Airlines ("KLM") moves, pursuant to Rule 12(b)(2), Fed.R.Civ.P., to dismiss the complaint in this diversity action for lack of personal

jurisdiction.[1]  For the reasons hereinafter stated, the motion is denied.[2]

This is an action to recover damages for the wrongful death of Carole E. Thomas, who died as a result of a collision on March 27, 1977 between the Pan American World Airways, Inc. 747 aircraft on which she was employed as a stewardess and a KLM 747 aircraft on the airport runway at Santa Cruz de Tenerife, the Canary Islands, Spain.

Plaintiff, a Tennessee domiciliary, commenced this action on December 10, 1977 in the United States District Court for the Middle District of Tennessee.  The case was transferred to this Court for consolidated and coordinated pretrial proceedings, pursuant to 28 U.S.C. § 1407.

KLM contends that it is not subject to service of process in Tennessee.  The amenability of a defendant to suit in a federal diversity action is governed by the law of the state in which the federal court sits, so long as that state's law comports with constitutional requirements.  *See, e. g., In-Flight Devices Corp. v. Van Dusen Air, Inc.,* 466 F.2d 220, 224 (6th Cir. 1972); *Arrowsmith v. United Press International,* 320 F.2d 219 (2d Cir. 1963).  Since this action was commenced in the Middle District of Tennessee, the Court must look to Tennessee law.

■ Tennessee's long arm statute, T.C.A. § 20–235, provides in relevant part:

20–235.  *Jurisdiction of persons unavailable to personal service in state—Classes of actions to which applicable.*—Persons who are nonresidents of Tennessee and residents of Tennessee who are outside the state and cannot be personally served with process within the state are subject to the jurisdiction of the courts of this state as to any action or claim for relief arising from:

.        .        .        .        .

(f) Any basis not inconsistent with the constitution of this state or of the United States.

"Person" as used herein shall include corporations and all other entities which would be subject to service of process if present in this state.  Any such person shall be deemed to have submitted to the jurisdiction of this state who acts in the manner above described through an agent or personal representative.

Through subsection (f), Tennessee has expanded the jurisdiction of its courts to the full extent permissible under the due process clause of the United States Constitution. *Gullett v. Qantas Airways Ltd.,* 417 F.Supp. 490, 494 (M.D.Tenn.1975), *citing Walker v. Kawasaki Motors Corp.,* 62 F.R.D. 607, 610 (E.D.Tenn.1973); *W. B. Dunavant & Co. v. Perkins,* 498 S.W.2d 905, 909 (Tenn.1973). Under federal due process requirements, jurisdiction over a foreign corporation may be sustained only if the corporation has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. State of Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), *quoting Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940); *accord, Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977).  There is no invariable rule for determining whether sufficient "minimum contacts" exist.  Rather, "[t]he amount and kind of activities which must be carried on by the foreign corporation in the state of the forum so as to make it reasonable and just to subject the corporation to the jurisdiction of that state are to be determined in each case." *Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 437, 445, 72 S.Ct. 413, 418, 96 L.Ed. 485 (1952).  The fact that the cause of action is entirely unrelated to the corporation's ac-

---

**1.**  At this point KLM is the only defendant in the action, the Court having dismissed the complaint as to defendant The Boeing Company with plaintiff's consent on May 18, 1978.

**2.**  After KLM served and filed the instant motion, plaintiff was permitted to conduct dis-

covery in the form of interrogatories on the issue of KLM's Tennessee contacts.  Plaintiff's opposition is based in large measure on KLM's answers to these interrogatories.

tivities within the state does not preclude a finding of jurisdiction. *See, e. g., id.; Gullett, supra* at 497; *Bryant v. Finnish National Airline,* 15 N.Y.2d 426, 260 N.Y.S.2d 625, 208 N.E.2d 439 (1965).

KLM contends that it lacks sufficient contacts with Tennessee to require it to defend a lawsuit there. It asserts that: it is a Dutch corporation with its principal place of business in the Netherlands; it is not authorized to fly into or out of any place within Tennessee; it is not authorized to do business in Tennessee and pays no taxes there. KLM further states that it has no office or bank account in Tennessee, and it does not own, lease or have any interest in any real property in that state. Defendant also submits that none of its directors, officers or employees reside in Tennessee[3] and that it has no general agent or agent for the service of process there.

In opposition, plaintiff points to contacts which do exist between KLM and the Tennessee forum. For example, KLM maintains listings of out-of-state, toll-free numbers in the telephone directories of six major urban centers in the state. Tennessee residents can call these numbers for information regarding KLM passenger and freight flights, reservations and fares. In addition, as part of its national marketing program, KLM places periodic advertisements in *The Wall Street Journal* and *The New Yorker,* both of which are circulated in Tennessee.

Plaintiff also notes that KLM supplies posters, brochures and other promotional materials to Tennessee travel agents and, more significantly, that KLM sales representatives make calls in Tennessee on a regular basis. One such representative, Mr. Dick Sloos ("Sloos"), made nine separate visits to Memphis in each of the years 1976 and 1977, most of which were of a two to three day duration. Another KLM sales representative, Mr. Tom Hut ("Hut"), also made eight separate sales trips of like duration to other Tennessee cities in 1977. Sloos and Hut not only made repeated visits to Tennessee travel agents on these occasions, but also called on and made sales presentations at such other diverse Tennessee institutions as churches and synagogues, hotels and motels, schools and colleges, automobile clubs and banks. In the Court's view, it is thus clear that KLM has sought, in a continuous and systematic manner, including but not limited to the frequent presence of its own sales representatives in the state,[4] to benefit from the sale of tickets to Tennessee residents.

In addition, plaintiff points out that tickets are actually sold by a large number of travel agents in Tennessee. There are eighty-five travel agents in the state approved by the International Air Transport Association. All of these agents have authority to issue tickets on behalf of those airlines from which they have received airline identification plates. A ticket issued in the name of any such airline may provide that a portion of the transportation be furnished by KLM. Moreover, KLM has issued its own airline identification plates to more than sixty Tennessee travel agencies. These agencies can not only issue tickets which include transportation on a KLM aircraft, but also, through use of the plate on blank Air Traffic Conference ticket stock, can issue tickets in KLM's name and airline code number. The dollar volume of those tickets issued in Tennessee in KLM's name alone amounted to $323,304 in 1976 and $238,019 in 1977. These figures demonstrate to the Court that KLM has not only sought to benefit from Tennessee sales in a

---

**3.** *But see* note 4, *infra.*

**4.** In its second supplemental answers to plaintiff's interrogatories, KLM indicated that on June 2, 1978, Sloos had a "[v]isit with Andy Robinson, who is now KLM's resident Sales Representative in Memphis." The record does not indicate when Robinson was installed in this position. Because the record in this respect is unclear and because the Court has concluded that due process requirements are met in this case even absent Robinson's presence, the Court has not considered this contact for present purposes. It should be noted, however, that the presence of a resident sales representative would serve to strengthen KLM's connection with Tennessee.

continuous and systematic manner, but also that the corporation has succeeded in this regard.

That the sales have been consummated by travel agents residing in Tennessee, and not through persons on KLM's own payroll is not significant for these purposes:

> Clearly it would not comport with notions of fair play and substantial justice to allow a business enterprise, whose overriding business purpose is maximum exploitation of the national market, to be free from suit as a matter of law . . simply because physical contacts . . had been reduced to a minimum. . . The fact that physical contacts are minimized through the use of independent contractors and distributors does not alter the basic existence of . . . [a defendant's] involvement in, and its pecuniary benefit from, a full exploitation of the . . . market.

*Curtis Publishing Co. v. Golino,* 383 F.2d 586, 591, 593–94 (5th Cir. 1967); *see Gelfand v. Tanner Motor Tours, Ltd.,* 385 F.2d 116, 120–21 (2d Cir. 1967), *cert. denied,* 390 U.S. 996, 88 S.Ct. 1198, 20 L.Ed.2d 95 (1968); *Frummer v. Hilton Hotels International, Inc.,* 19 N.Y.2d 533, 281 N.Y.S.2d 41, 227 N.E.2d 851 (1967).

Accordingly, the Court concludes that KLM has sufficient "minimum contacts" with Tennessee so that it would not "offend 'traditional notions of fair play and substantial justice' " to require it to defend this action in that state. Therefore, the motion is denied.

It is so ordered.