**Frank MITCHELL**

v.

**The WHITE MOTOR CREDIT CORPORATION and Nortran, Inc., d/b/a El Dorado Trucks.**

**No. 3–83–0036.**

United States District Court,
M.D. Tennessee,
Nashville Division.

Jan. 27, 1986.

Don R. Ash and Richard L. Cummings, Murfreesboro, Tenn., Burger, Fly & McFarlin, for plaintiff.

Gary M. Brown, Trabue, Sturdivant & Dewitt, Nashville, Tenn., Gerald G. Patterson, for defendant.

Michael R. Landers, El Dorado, Ariz., for defendants Nortran dba El Dorado Trucks.

## MEMORANDUM

WISEMAN, Chief Judge.

This case arises under 15 U.S.C. § 1989, and involves claims arising from the sale of a used truck by White Motor Credit Corporation ("White Motor") to Frank Mitchell. Defendants White Motor Credit Corporation and Nortran, Inc., d/b/a El Dorado Trucks ("Nortran") move for summary judgment on the plaintiff's claims against them, asserting (1) that the odometer disclosure requirements contained in section 408 of the Motor Vehicle Information and Cost Savings Act, 15 U.S.C. § 1988, and section 3 of the Arkansas Odometer Regulation Act, Ark.Stat.Ann. § 75–2403, are applicable to the transfer of this truck and (2) that plaintiff may not recover against White Motor or Nortran under a theory of breach of warranty or fraudulent misrepresentation. For the reasons set out below, the Court grants defendants' motion for summary judgment on the issues of federal and Arkansas odometer disclosure claims, and denies their motion on the issues of breach of warranty and fraudulent misrepresentation.

### I. Factual Background

In 1982, plaintiff Mitchell received a notice from defendant White Motor which listed several used vehicles for sale, including the truck which is the subject of this litigation. This notice gave the truck's model and serial number, and described the condition of the truck as "excellent." The truck was being kept in El Dorado, Arkansas, on the lot of defendant Nortran, an independent dealership. After conversations with White Motor's regional finance

manager, plaintiff decided to buy the truck, and traveled to Arkansas to inspect it. At this time, the truck's odometer showed 105,981 miles. Plaintiff alleges that, in the course of making the sale, the defendants made representations as to the truck's mileage, condition, and appearance. Within a few months after the purchase, plaintiff allegedly experienced serious problems with the truck. While the truck was being repaired, a mechanic discovered that the odometer had been reset or replaced, and that the truck apparently had significantly more mileage than the odometer reflected. Some dispute exists as to whether White Motor or Nortran knew of any such tampering. Plaintiff asked to rescind the purchase agreement, and defendant White Motor agreed, but the parties were unable to reach an agreement as to the terms of recision. Plaintiff failed to make any payments on the truck other than the initial down payment; consequently, White Motor repossessed the truck.

## II. Jurisdiction

■ The Court first must determine whether it may exercise jurisdiction over this action. Plaintiff claims that the action arises under this Court's diversity jurisdiction and federal question jurisdiction. The complaint alleges that plaintiff is a resident of Tennessee, that White Motor is a Nebraska corporation having its principal place of business in a state other than Nebraska, and that Nortran is a "truck dealer in ... Arkansas." It cannot be determined from those allegations whether there is complete diversity of citizenship between the plaintiff and each of the defendants. *See, e.g., Health Group Management Co. v. Walker County Medical Center, Inc.,* 595 F.Supp. 381, 382 (M.D.Tenn.1984); *Estep & Associates, Inc.*

*v. Leonard Hill & Sons,* 543 F.Supp. 124, 125–26 (M.D.Tenn.1982).[1] Congress, however, has granted federal district courts jurisdiction over actions arising under Subchapter IV of the Motor Vehicle Information and Cost Savings Act.[2] Accordingly, this Court exercises its federal question jurisdiction over the suit.

■ Defendants challenge the *in personam* jurisdiction of this Court only on the issue concerning the Arkansas odometer disclosure requirements; however, their jurisdictional argument is applicable to the entire case, and the Court shall consider it as such. Defendants argue that § 20–2–201(a) of the Tennessee Code Annotated, a state long-arm statute, precludes this Court from adjudicating the claim because, although both defendants are foreign corporations arguably doing business in Tennessee,[3] the claim arises wholly outside Tennessee and has no connection with the state. *See Turner v. Nationwide Auto Transporters, Inc.,* 507 F.Supp. 396 (E.D. Tenn.1980) (citing *Gillis v. Clark Equipment Co.,* 579 S.W.2d 869 (Tenn.Ct.App. 1978) (recognizing T.C.A. § 20–2–201 as a jurisdictional statute and applying it in determining *in personam* jurisdiction in a diversity action)); *see also Williams v. Williams,* 621 S.W.2d 567, 569 (Tenn.Ct. App.1981) (stating that T.C.A. § 20–20–201 imposes a jurisdictional limitation upon suits against foreign corporations). Based upon the reasons stated herein, the Court finds that this statute is merely a procedural limitation on acquiring jurisdiction over foreign corporations doing business in Tennessee, and not a jurisdictional limitation.

■ Since the Court exercises federal question jurisdiction over this case, the Court must determine what standard to apply in determining whether it also has *in*

---

1. Although defective allegations of jurisdiction may be amended, 28 U.S.C. § 1653, the Court chooses to resolve this motion without pausing for the defect to be cured. The Court's exercise of federal question jurisdiction and application of that jurisdiction to this action negates any threat of prejudice to the plaintiff.

2. *See* 15 U.S.C. § 1989(b) (1982).

3. The parties have not briefed thoroughly whether both defendants are "doing business" in Tennessee or whether "minimum contacts" have been established. Construing the pleadings in the light most favorable to the party opposing summary judgment, for purposes of resolving defendants' motion, the Court shall assume that minimum contacts exist.

*personam* jurisdiction over the case.[4] This standard differs somewhat from a diversity action. The jurisdictional reach of a federal district court in a diversity case is determined by the law of the state where the court is located. *See, e.g., Pickens v. Hess,* 573 F.2d 380, 385 (6th Cir.1978); *Southern Machine Co. v. Mohasco Industries, Inc.,* 401 F.2d 374, 376 n. 2 (6th Cir.1968); *Milan Express, Inc. v. Missie, Inc.,* 575 F.Supp. 931, 933 (W.D.Tenn.1983); *Chattanooga Corp. v. Klingler,* 528 F.Supp. 372, 375 (E.D.Tenn.1981), *reversed on other grounds,* 704 F.2d 903 (6th Cir.1983); *Gullett v. Qantas Airways Ltd.,* 417 F.Supp. 490, 492 (M.D.Tenn.1975). In a federal question case, the district court's power to exercise *in personam* jurisdiction is limited to that provided by the *Federal Rules of Civil Procedure,* and because it was necessary to utilize state long-arm provisions to obtain service of process on the two foreign corporate defendants in this case, *in personam* jurisdiction is also limited by two Tennessee long-arm statutes, T.C.A. §§ 20-2-201 & 202 (1980). *Chattanooga Corp.,* 528 F.Supp. at 375; *see Wells Fargo & Co. v. Wells Fargo Express Co.,* 556 F.2d 406, 416-19 (9th Cir.1977); *Navarro v. Sedco, Inc.,* 449 F.Supp. 1355, 1357 n. 1 (S.D. Tex.1978), *overruled on other grounds, Prejean v. Sonatrack, Inc.,* 652 F.2d 1260, 1267 (5th Cir.1981). Thus, Tennessee long-arm statutes are applicable in this action even though a federal question is involved.

Federal courts have faced the question before of whether T.C.A. § 20-2-201 is the exclusive means of acquiring jurisdiction over foreign corporations doing business in Tennessee.[5] Almost uniformly, they have held that T.C.A. § 20-2-201 is only a procedural alternative to Tennessee Rule of Civil Procedure 4.04(4).[6] *See, e.g., Milan Express,* 575 F.Supp. at 934 n. 1; *Gullett,* 417 F.Supp. at 497-98; *Gallaher v. Chemical Leaman Tank Lines, Inc.,* 367 F.Supp. 1063 (E.D.Tenn.1973); *see also W.D. Lawson & Co. v. Penn Central Co.,* 456 F.2d 419 (6th Cir.1972) (the court held that T.C.A. § 20-220 (recodified at § 20-2-201) was merely a procedural limitation and that a foreign corporation could be sued in Tennessee for a cause of action arising elsewhere on the basis of T.C.A. § 20-218; Judge Wilson in *Gallaher* followed the *Lawson* result, stating that although T.C.A. § 20-218 was repealed shortly after the decision in *Lawson,* the legislative intent behind repeal was to remove laws inconsistent with the recently-enacted Tennessee Rules of Civil Procedure). *But see Turner v. Nationwide Auto Transporters, Inc.,* 507 F.Supp. 396 (E.D.Tenn.1980); *Gillis v. Clark Equipment Co.,* 579 S.W.2d 869 (Tenn.Ct.App.1978). These courts reason that application of T.C.A. § 20-2-201 as a jurisdictional limit on the exercise of personal jurisdiction over a foreign corporation is inconsistent with the clear intent of the legislature in enacting § 20-2-214(a)(6) to expand the personal jurisdiction of the Tennessee courts to the limits of the Due Process Clause.[7] *See generally W.G.*

---

4. The parties make no distinction between federal question jurisdiction and diversity jurisdiction in this action, or the fact that a court's personal jurisdiction may vary depending on the subject matter jurisdiction which is present. Nor do they cite any of the federal cases interpreting this particular Tennessee long-arm statute, T.C.A. § 20-2-201(a) (1980).

5. The Tennessee legislature provided no legislative history whatsoever to aid courts in their interpretation of T.C.A. § 20-2-201. The only mention of it is that the Tennessee Senate passed the House bill. *See* Senate J. Tenn. 770-71 (1887); House J. Tenn. 790 (1887).

6. Service in compliance with Tenn.R.Civ.P. 4.04(4) may be made:

Upon a domestic corporation, or a foreign corporation doing business in this state, by delivering a copy of the summons and of the complaint to an officer or managing agent thereof, or to the chief agent in the country wherein the action is brought, or by delivering the copies to any other agent authorized by appointment or by law to receive service on behalf of the corporation.

Tenn.R.Civ.P. 4.04(4) (1981). *See Gallaher,* 367 F.Supp. at 1065.

7. It is well-established that T.C.A. § 20-2-214, the general long-arm statute, confers jurisdiction to the full extent allowable under the Due Process Clause. *Pickens,* 573 F.2d at 385; *Chattanooga Corp.,* 528 F.Supp. at 375; *Nicholstone Book Bindery, Inc. v. Chelsea House Publishers,* 621

*Bush & Co. v. Sioux City & New Orleans Barge Lines, Inc.,* 474 F.Supp. 537, 541–43 (M.D.Tenn.1977) (description of the history and purpose of T.C.A. § 20–235(f) (now T.C.A. § 20–2–214(a)(6)). The Court is persuaded by this reasoning, and holds that T.C.A. § 20–2–201 is not the exclusive means of acquiring jurisdiction or serving process upon foreign corporations doing business in Tennessee.

■ It is well-established that a court in a federal question case may exercise jurisdiction in its discretion over state law claims, under the doctrine of pendent jurisdiction, where a substantial federal claim is presented, and the federal and state claims "derive from a common nucleus of operative fact." *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218, 228 (1966). *See, e.g., Melamed v. Lake County National Bank,* 727 F.2d 1399, 1403–04 (6th Cir.1984). This Court has pendent jurisdiction over this case because the federal and state claims derive from a single transaction, and the grant of jurisdiction to this Court in Section 409 of the federal statute, 15 U.S.C. § 1989, indicates Congress' finding that a substantial federal claim is involved.

In summary, the Court concludes that it has *in personam* jurisdiction over this action and that pendent jurisdiction exists over the breach of warranty and fraudulent

misrepresentation claims governed by Tennessee law and the Arkansas odometer disclosure claim.

## III. Federal and State Odometer Disclosure Claims

### A. Federal Odometer Claims

■ In 1972, Congress passed the Motor Vehicle Information and Cost Savings Act.[8] Included in the Act was Subchapter IV,[9] which was intended to prohibit tampering with odometers on motor vehicles and protect purchasers who rely on the odometer reading as an index of the value and condition of a motor vehicle.[10] In furtherance of the consumer protection objective, Congress required the Secretary of the United States Department of Transportation to promulgate rules requiring the transferor of a motor vehicle to disclose to the transferee either the cumulative mileage registered on the odometer or the fact that the mileage shown on the odometer is known to be incorrect.[11] Shortly after this dictate, the National Highway Traffic Safety Administration ("NHTSA") of the Department of Transportation issued these rules pursuant to the guidelines established by section 408 of the Act, 15 U.S.C. § 1988.[12] Plaintiff claims that the defendants violated the federal odometer disclosure statute by failing to disclose the actual mileage of the truck.[13] The defendants

S.W.2d 560, 562 (Tenn.1981), *cert. denied,* 455 U.S. 994, 102 S.Ct. 1623, 71 L.Ed.2d 856 (1982).

**8.** 15 U.S.C. §§ 1901–2012 (1982).

**9.** 15 U.S.C. §§ 1981–1991 (1982).

**10.** *See* 15 U.S.C. § 1981 (1982). The Act defines "motor vehicle" broadly as "any vehicle driven or drawn by mechanical power manufactured privately for use on the public streets, roads, and highways, except any vehicle operating exclusively on a rail or rails." 15 U.S.C. § 1901(15) (1982).

**11.** Section 408(a) of the Act, 15 U.S.C. § 1988(a), states as follows:
 **Promulgation of rules**
 (a) Not later than 90 days after October 20, 1972, the Secretary shall prescribe rules requiring any transferor to give the following written disclosure to the transferee in connection with the transfer of ownership of a motor vehicle:

 (1) Disclosure of the cumulative mileage registered on the odometer.
 (2) Disclosure that the actual mileage is unknown, if the odometer reading is known to the transferor to be different from the number of miles the vehicle has actually traveled.
Such rules shall prescribe the manner in which information shall be disclosed under this section and in which such information shall be retained.

**12.** *See* 38 Fed.Reg. 2979 (1973) (codified at 49 C.F.R. § 580 (1984)).

**13.** In order to establish a violation of the Act and justify the imposition of civil liability, a transferee must prove not only that a transferor failed to disclose in writing any of the information required by regulation, *see* 49 C.F.R. § 580.4(a) & (c) (1984), but also that the transferor violated the Act with an intent to deceive the transferee. *See, e.g., Witkowski v. Mack Trucks, Inc.,* 712 F.2d 1352, 1353–54 (11th Cir. 1983).

argue that the Act's disclosure requirements are not applicable to them in this case, citing a regulation exempting certain classes of transferors from the disclosure requirements of section 408 of the Act, 15 U.S.C. § 1988.[14] For the reasons stated herein, the Court upholds the regulatory exemption at issue in this case, and grants defendants' motion for summary judgment on this issue.[15]

The Court begins its analysis, as in every case involving construction of a federal statute, with the language of the statute itself. *Greyhound Corp. v. Mt. Hood Stages, Inc.*, 437 U.S. 322, 330, 98 S.Ct. 2370, 2375, 57 L.Ed.2d 239, 247 (1978). Section 408 of the Act, 15 U.S.C. § 1988, requires the Secretary of Transportation to "prescribe rules requiring any transferor to give the following written disclosure to the transferee in connection with the transfer of a motor vehicle ..." Pursuant to this directive, the NHTSA promulgated rules for the disclosure of odometer information and specified the form to be filled out by transferors of motor vehicles. In addition, the NHTSA exempted transferors in four instances from the disclosure requirements.

▮▮▮▮▮▮ The crucial question presented in this case is whether the Act itself permits the NHTSA to exempt any such transferors from the disclosure requirements. The regulation being attacked here, found at 49 C.F.R. § 580.5(a)(1) (1984), exempts the transferors of motor vehicles having a gross vehicle weight rating ("GVWR") of more than 16,000 pounds from the odometer disclosure requirements set forth in 49 C.F.R. § 580.4 (1984). The vehicle here is one whose GVWR, as defined in 49 C.F.R. § 571.3 (1984), is 45,000 pounds.[16] Clearly, the defendants are members of the class of transferors contemplated by the regulatory exemption. Although the plaintiff has failed to challenge the validity of 49 C.F.R. § 580.5(a)(1) or the authority of the NHTSA to promulgate regulations exempting any transferor from the operation of section 408 of the Act, 15 U.S.C. § 1988, the Court is obliged to consider these issues in determining the outcome of the

14. *See* 49 C.F.R. § 580.5(a)(1) (1984).

15. In reaching this conclusion, the Court rejects the position taken by two sister courts on this exact issue, which neither the plaintiff nor defendants cite in their briefs. *See Lair v. Lewis Service Center,* 428 F.Supp. 778, 781 (D.Neb. 1977); *Davis v. Dils Motor Co.,* 566 F.Supp. 1360, 1362 (S.D.W.Va.1983) (quoting *Lair*). These courts ruled that by exempting certain classes of motor vehicles from odometer disclosure requirements, the NHTSA has, in effect, amended the statutory definition of "motor vehicle." *See supra* note 9. The courts cite for their authority the fact that the Act contains two more narrowly drawn definitions—"passenger motor vehicle," defined at 15 U.S.C. § 1901(1); and "multipurpose motor vehicle," defined at 15 U.S.C. § 1901(2)—which are used in the subchapters of the Act dealing with bumper standards and consumer information study. These two courts reason that if Congress had intended to allow exemption to the odometer disclosure requirements, that august body would have used one of these terms or some other term less broad than the all-inclusive term "motor vehicle" employed in section 408 of the Act, 15 U.S.C. § 1988. Therefore, these courts held 49 C.F.R. § 580.5(a)(1) void, finding it "in direct variance with an unambiguous statutory provision." *Lair,* 428 F.Supp. at 781 (quoting *United*

States v. Maxwell, 278 F.2d 206, 210 (8th Cir. 1960)).

This Court, however, rejects the reasoning of the *Lair* court, finding instead that 49 C.F.R. § 580.5(a)(1) exempts certain classes of transferors, not classes of motor vehicles themselves in full compliance with the language and purposes of the Act.

16. *See* Affidavit of Neil H. Cochran, August 30, 1984 (submitted with Defendants' Motion for Summary Judgment). Although 49 C.F.R. § 480.5 refers to 49 C.F.R. § 570.3 for the definition of the phrase "gross vehicle weight rating," the phrase actually is defined in 49 C.F.R. § 571.3 as "the value specified by the manufacturer as the loaded weight of a single vehicle." It is obvious to the Court that the Secretary has failed to keep the regulations internally consistent as revisions have been made; therefore, the reference to 49 C.F.R. § 570.3 shall be disregarded. The defendants have submitted an affidavit that the manufacturer's specification for this vehicle is 45,000 pounds. The plaintiff argues, however, that he purchased only the cab of the truck from the defendant White Motor rather than the entire vehicle, and that the GVWR for the cab as specified by the manufacturer is 13,500 pounds. The Court finds that the plaintiff's method of weighing the vehicle does not conform to the regulatory definition.

motion for summary judgment. Therefore, if the Court finds that the exemption in 49 C.F.R. § 580.5(a)(1) is valid, the defendants must be granted summary judgment on the issue of the federal odometer disclosure requirements.

In reviewing an administrative regulation, the Court has a clear duty to grant "more than mere deference or weight" to the interpretation of a statute by the agency charged with its enforcement. *Batterton v. Francis*, 432 U.S. 416, 426, 97 S.Ct. 2399, 2406, 53 L.Ed.2d 448, 457 (1977). *See also Walker v. Adams*, 578 F.Supp. 50, 52 (W.D.Ky.1983), *aff'd*, 741 F.2d 116 (6th Cir.1984). The Court is extremely hesitant to substitute its judgment for that of an administrative agency on a question of statutory interpretation, especially when this question is within the particular agency's area of specialization. The Court will declare a regulation invalid only if it finds that the Secretary of the appropriate agency "exceeded his [or her] statutory authority or if [the regulation] is "arbitrary, capricious, or otherwise not in accordance with the law." *Batterton*, 432 U.S. at 426, 97 S.Ct. at 2406, 53 L.Ed.2d at 457 (quoting 5 U.S.C. § 706(2)(A) (1977)); 5 U.S.C. § 706(2)(c) (1977)). On the other hand, the Court will not abdicate to federal agencies the interpretation of regulations which are promulgated pursuant to an empowering statute. Federal courts, after all, bear the ultimate responsibility for interpreting federal statutes. Any regulation promulgated pursuant to rulemaking authority conferred by statute assumes the force of law only to the extent it is consistent with the statutory scheme it was designed to implement. *Insurance Co. of North America v. Gee*, 702 F.2d 411, 414 (2d Cir.1983). Accordingly, the Court is obliged to declare invalid any regulation that is inconsistent with the will of Congress as expressed by the governing statute. *United States v. Larionoff*, 431 U.S. 864, 873, 97 S.Ct. 2150, 2156, 53 L.Ed.2d 48, 56 (1977).[17]

The purpose of the Act's odometer disclosure requirements expressed by Congress in the legislative history serves as a guide to the Secretary in promulgating regulations which are consistent with the will of Congress. In the preamble to these regulations, the NHTSA explained its reasons for exempting certain classes of transferors from the disclosure requirements. In explaining the exemption for heavier vehicles, the NHTSA stated:

A new section, [49 C.F.R. § ] 580.5, has been added in response to a number of comments that objected to the application of the requirements to categories of vehicles for which the odometer is not used as a guide to value. Buses and large trucks, for example, are routinely driven hundreds of thousands of miles, and their maintenance records have traditionally been relied on by Buyers as the principal guide to their condition. The NHTSA is in agreement with the position taken by Freightliner [Corp.], White [Motor Corp.], and the National Association of Motor Bus Operators, and has therefore created an exemption for larger vehicles. The exemption applies to vehicles having gross weight ratings of more than 16,000 pounds.

38 Fed.Reg. 2978 (1973). This exemption is consistent with the language of the empowering statute, which directs the Secretary to issue rules applying to transferors. This exemption also is consistent with the statutory scheme contemplated by Congress when it adopted the Act. Congress enacted odometer requirements to "establish a national policy against odometer tampering and prevent consumers from being victimized by such abuses,"[18] finding that

---

17. Citing *United States v. Larionoff*, the Court of Appeals for the Sixth Circuit in *Meade Township v. Andrus*, 695 F.2d 1006 (6th Cir.1983), articulated a "clear language" standard that a court must hold a regulation invalid if it is inconsistent with the "clear language" of the governing statute.

18. S.Rep. No. 413, 92nd Cong., 2d Sess. ——, *reprinted in* 1972 *U.S.Code Cong. & Ad.News*, 3960, 3962.

"purchasers, when buying motor vehicles, rely heavily on the odometer reading as an index of the condition and value" of the vehicle.[19]

■ The Court has examined the provisions of the Act, its legislative and regulatory history, and case law development. The Court is satisfied that the regulatory exemption comports with the purpose of the odometer disclosure requirements which is to protect consumers who rely upon odometer readings as a guide to value.[20] The NHTSA has determined that purchasers of heavier vehicles do not rely on odometer readings for these calculations. Because the inclusion of transferors of large commercial vehicles would not further the purpose of the Act as contemplated by Congress, this Court upholds the regulatory exemption, finding it to be neither arbitrary nor capricious. The Court defers to the agency's judgment and upholds the regulatory exemption. Accordingly, summary judgment on the issue of federal odometer disclosure is granted.

### B. Arkansas Odometer Claim

■ Plaintiff's second claim is based on the odometer disclosure requirements of the Arkansas Odometer Regulation Act, Ark.Stat.Ann. § 75–2403 (1975), which are almost identical to the requirements contained in section 408 of the federal statute, 15 U.S.C. § 1988. The Arkansas statute states that "[t]he registrar of motor vehicles shall adopt, pursuant to the administrative procedure act, rules not inconsistent with this act or Title IV of the Federal Motor Vehicle Information and Cost Savings Act or any rules promulgated thereunder prescribing the manner in which such

written disclosure shall be made." These regulations have in fact been promulgated, although the parties failed to discover them.[21] The state regulations are strikingly similar to the federal odometer regulations, and exempt motor vehicles having a "gross unladen weight" of more than 16,000 pounds from the state statute's odometer disclosure requirements.[22] Therefore, applying the Court's analysis of the federal odometer disclosure statute and regulations promulgated thereto, the Court finds that this vehicle is exempt from the disclosure requirements of the Arkansas statute.

### IV. State Claims

#### A. Breach of Warranty

■ Defendants assume a series of defensive positions with respect to plaintiff's breach of warranties claims. Defendants first argue that the statements which were made concerning the truck, including the description of the truck's condition as "excellent" in the sales notice, did not rise to the level of express warranties. Defendants claim that the statements related only to the "good condition" of the truck, and were not relied upon by the plaintiff. Plaintiff argues that the statements were not limited to the "good condition" of the truck, but rather that White Motor and Nortran created express warranties by making representations as to the truck's mileage, condition and appearance. Plaintiff contends that the representations became a part of the basis of the bargain. *See* T.C.A. § 47–2–313(1)(a) (1979). The deposition testimony cited by the parties indicates that material issues of fact exist as to whether representations were made

---

**19.** 15 U.S.C. § 1981 (1982).

**20.** *See* S.Rep. No. 413, 92nd Cong., 2d Sess., *reprinted in* 1972 *U.S.Code Cong. & Ad.News*, 3960, 3962.

**21.** Motor Vehicle Regulation 1984–2: Odometer Disclosure Requirements, —— Ark.Admin.Reg. —— (Docket No. 006.0584–007 effective date July 11, 1984). The Arkansas regulations incorporate the state statutory definition of "motor vehicle:"

"Motor vehicle" means any self-propelled vehicle not operated exclusively upon railroad tracks, except snowmobiles and other devices designed and used primarily for the transportation of persons over natural terrain, snow, or ice propelled by wheels, skis, tracks, runners, or whatever other means.

*Id.* at 1(a); Ark.Stat.Ann. § 75–2401(2) (1975). This definition is very similar to the federal definition of "motor vehicle." *See supra* note 10.

**22.** No opinion has yet construed this regulation.

concerning the truck's mileage, condition and appearance, and whether the plaintiff relied on the defendants' statements in making the purchase. Accordingly, the Court denies the motion for summary judgment on the question of whether express warranties were created.

■ Defendants next argue that, assuming these statements were express warranties, none were breached since the statements were accurate. Defendants claim no warranties were breached because the plaintiff admitted the vehicle was a "sharp truck" (and therefore, according to defendants, admitted the truck was in "good condition"), and because the mileage information conveyed to plaintiff by White Motor's regional finance manager "accurately reflected the number of miles displayed on the [truck's] odometer."[23] Defendants mischaracterize the focus of the express warranty which the plaintiff claims were created. Plaintiff contends that the defendants created an express warranty as to the truck's *actual* mileage, not the mileage reflected on the odometer. This contention may be proven at trial. Accordingly, defendants' motion for summary judgment is denied as to whether or not express warranties were breached.

■ Next, defendants argue that, assuming that the written sales notice which described the truck's condition as "excellent" was an express warranty, the notice "merged" into the contract of sale which disclaimed all warranties. The doctrine of merger generally states in contractual matters that the last agreement as to the same subject matter, which is signed by all the parties but contains terms inconsistent with the former oral or written contract, will supersede the former agreement if supported by sufficient consideration. *See American Fruit Growers v. Hawkinson*, 21 Tenn.App. 127, 133, 106 S.W.2d 564,

568 (1937); *see, e.g., Bringhurst v. Tual*, 598 S.W.2d 620, 622 (Tenn.Ct.App.1980). In this case, the express warranties which allegedly were created prior to the signing of the sales contract were never part of an earlier agreement which could be merged into a later agreement. The defendants also argue that all warranties, express and implied, were disclaimed in a form provision of the sales contract.[24] Form disclaimers of express warranties clearly are disfavored in Tennessee, while form disclaimers of implied warranties often are sufficient to accomplish their intended purpose. The comments to the Tennessee statute governing the creation of express warranties state:

> "Express" warranties rest on "dickered" aspects of the individual bargain, and go so clearly to the essence of that bargain that words of disclaimer in a form are repugnant to the basic dickered terms. "Implied" warranties rest so clearly on a common factual situation or set of conditions that no particular language or action is necessary to evidence them and they will arise in such a situation unless unmistakably negated.

T.C.A. § 47–2–313 comment 1 (1979). Courts will refuse to give effect to unbargained for language of a disclaimer which is inconsistent with the language of an express warranty. T.C.A. § 47–2–316(1) & comment 1 (1979). On the other hand, courts will give effect to disclaimers of implied warranties of merchantability and fitness if the disclaimers are conspicuous, if they mention "merchantability," and if they are in writing with reference to the fitness warranty. T.C.A. § 47–2–316(2) (1979). *See Ford Motor Co. v. Moulton*, 511 S.W.2d 690, 692 (Tenn.), *cert. denied*, 419 U.S. 870, 95 S.Ct. 129, 42 L.Ed.2d 109 (1974). In this case, the form disclaimer of any implied warranties is sufficient to accomplish its purpose. Accordingly, the

---

**23.** Defendants' Reply Brief at 5.

**24.** The sales contract contains the following form disclaimer:

> Limitation of Warranty: Seller makes no warranties as to the property, express, implied, or implied by law except the manufacturer's

> standard vehicle warranty, which is incorporated herein by reference, and seller specifically disclaims any implied warranty of merchantability or fitness for a particular purpose and any liability for consequential damages.

Court finds that no material question of fact exists as to the application of implied warranties, and grants defendants' motion for summary judgment to this extent. The language of the disclaimer of express warranties, however, is inconsistent with the language of the alleged express warranties and therefore may be insufficient. Therefore, the Court finds that since a material question of fact exists as to whether express warranties were created, a material issue of fact also exists as to whether the contractual disclaimer was sufficient and denies defendants' motion for summary judgment on this issue.

Finally, defendants argue that the plaintiff's election of remedies bars his claim for breach of warranties. Defendants' account of the facts is that the plaintiff offered to rescind the sale contract when he discovered that the truck had more mileage than the odometer indicated. Defendants explain that White Motor accepted the plaintiff's offer, and returned his down payment and the maximum travel allowance provided for in the sales notice. Pursuant to the plaintiff's offer of rescission, and because he made no further payments, defendants contend they repossessed the truck and began looking for a new buyer. Defendants state that the plaintiff subsequently refused to accept the return of the down payment and travel expenses, and brought this action based on the contract of sale. Plaintiff's version of the facts is that his offer to rescind the sales contract was based upon the conditions that he be reimbursed for his lost time and costs as well as have his down payment returned.

 Defendants argue that by not honoring the terms of the sales contract, the plaintiff elected his remedy, and is entitled to rescission and a return of his down payment. It is well-settled that, according to the doctrine of election of remedies, a party who clearly has chosen to pursue one of two inconsistent and irreconcilable remedies cannot later resort to the other. *See, e.g., Barger v. Webb*, 216 Tenn. 275, 280–81, 391 S.W.2d 664, 666–67 (1965); *Purcell Enterprises, Inc. v. State*, 631 S.W.2d 401,

408 (Tenn.Ct.App.1981); *Hutchison v. Pyburn*, 567 S.W.2d 762, 764–65 (Tenn.Ct.App.1977). The theories of rescission and damages for breach of contract clearly are inconsistent remedies. *See Petty v. Darin*, 675 S.W.2d 714, 716 (Tenn.1984). Therefore, plaintiff's action for damages for breach of contract will be foreclosed if a rescission actually took place. Rescission involves the avoidance of a transaction and usually involves the refund of the purchase price or otherwise placing the parties in the position they occupied before the transaction took place. The purchaser who has been the victim of fraud or mistake, however, may recover, in addition to the purchase price, other damages which he or she incurred in good faith by reason of the fraud or mistake, such as the cost of improvements. *Mills v. Brown*, 568 S.W.2d 100, 102–03 (Tenn.1978). *See Isaacs v. Bokor*, 566 S.W.2d 532, 538–39 (Tenn.1978). As stated in the following discussion on the issue of fraudulent misrepresentation, the plaintiff may have been the victim of fraud. Therefore, since a rescission may not have occurred, a material question of fact clearly presents itself as to whether plaintiff's "lost time" and "costs" are reasonable damages incurred in good faith. Accordingly, defendants' motion for summary judgment on the issue of election of remedies is denied.

**B. Fraudulent Misrepresentation**

It is well-settled that in order to maintain a successful cause of action for fraudulent misrepresentation, there must be proof of false representation of an existing or post material fact, which must have been made knowingly, without belief in its truth, or recklessly, without belief in its truth, or recklessly. Some person must have relied on the false representation and suffered some damage as a result of the reliance. *Graham v. First American National Bank*, 594 S.W.2d 723, 725–26 (Tenn.Ct.App.1979). For a summary of the Tennessee law on fraud, see *Edwards v. Travelers Insurance*, 563 F.2d 105, 110–15 (6th Cir. 1977). Plaintiff argues that, although discovery has not been completed, a false

representation may have been made knowingly by White Motor Credit Corporation and Nortran as to the truck's mileage because records indicate that some repair work was done by White Motor Corporation. Plaintiff contends that a possibility exists that agents of White Motor Credit Corporation and Nortran had knowledge of the truck's actual mileage which might have been discovered during repair operations by employees of White Motor Corporation. Defendants argue that the representations made by employees of White Motor Credit Corporation and Nortran as to the truck's mileage were true to the extent of their knowledge. Defendants also contend that the affidavit of the plaintiff's counsel which cites the two repair bills is based on inadmissible hearsay since plaintiff's counsel has no personal knowledge as to these facts. Defendants also claim that the two repair bills fail to show that they had any knowledge as to the truck's correct mileage because White Motor Corporation, a separate corporate entity, performed the repair work. Defendants claim that, at most, a mutual mistake of fact existed at the time of the sale, and therefore, no fraud occurred.

■ Fraud rarely is a matter appropriate for summary disposition. It hinges on a subjective determination of the parties' knowledge. Defendants may or may not have had any knowledge of the falsity of their representations as to the truck's mileage. The Court cannot conclude that there is no material issue of fact on this point. Moreover, the plaintiff should be given the opportunity to conduct discovery on this issue to attempt to discover if the defendants committed fraud. Accordingly, defendants' motion on the issue of fraudulent misrepresentation is denied.

### Summary

For the reasons set forth herein, defendants' motion for summary judgment is GRANTED on the issues of federal and Arkansas odometer disclosure claims, and DENIED on the issues of breach of warranty and fraudulent misrepresentation.